STATE OF NEBRASKA, APPELLEE, V. CALVIN J. WHITE, APPELLANT.

508 N.W.2d 554

Filed November 19, 1993.   No. S-92-937.

Joseph H. Murray, Lance J. Johnson, and Gregory C. Damman for appellant.

Don Stenberg, Attorney General, and Barry Waid for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and MORAN, D.J., Retired.

LANPHIER, J.

Defendant, Calvin J. White, was charged with killing Patricia Cool by firing a shotgun into her multiple times. Cool was to shelter defendant's girl friend from him following a breakup. He was also charged with theft of an auto, which he allegedly did in an attempt to flee. Defendant was convicted, following a jury trial in the district court for Fillmore County, of second degree murder, use of a firearm to commit murder, and theft of an auto. Defendant asserts 14 assignments of error.

## BACKGROUND

On December 26, 1991, defendant and his girl friend, Penny Ward, argued. The next day, defendant went to visit her. She told defendant to leave, which he did, but he later returned and took a gun barrel out of a closet. Penny Ward called her friend Patricia Cool, the victim, after he left. Penny Ward asked if she could spend a couple of days with Cool. Cool arranged to pick Penny Ward up at Wilma Ward's house. Cool arrived in a pickup truck with her mother, Mona Thole. Cool went inside to help Penny Ward get her children ready to leave. Thole waited in the pickup truck. Defendant arrived, approached the pickup, and tried to open the driver's side door, but it was locked. Defendant then went up to the house. As defendant walked from the truck to the house, Thole saw that he had a shotgun. She started to honk the horn to warn Cool and Penny Ward.

Hearing the horn, Cool went to the front door and started to open it. Apparently seeing defendant, Cool made an exclamation and started to shut the door. Penny Ward then heard a gunshot and saw Cool move back from the door. Penny Ward also saw defendant enter the house and fire a second shot. From the truck, Thole saw defendant raise the gun and shoot it toward the front door. Thole saw him raise the gun and fire again. After the second shot, Thole drove to get help from some police officers whose patrol cars she recalled seeing.

After the second shot, Penny Ward stood in front of defendant to try to protect the others in the home: Cool; Penny Ward's son Wayne; and Wilma Ward's daughter, Candice. Cool was slouched on the floor wounded when defendant fired a third shot. Penny Ward testified that she thought she was on top of Cool at this point trying to protect her by attempting to push the gun barrel away. Penny Ward testified that after the third shot, defendant swung the gun around toward her son and may have said something like "choose." Penny Ward then ran over and tackled her son to protect him. Just after she tackled her son, she heard a fourth shot. Defendant left.

Defendant took a 1992 Oldsmobile and drove to Texas. He then decided to return to Nebraska. When defendant was driving north through McPherson County, Kansas, a deputy sheriff spotted him. Defendant was arrested after he drove into a ditch while being chased by the deputy. The deputy transported defendant to the McPherson County jail after reading him his *Miranda* rights.

In the McPherson County jail, defendant was placed two cells down from Jason Thomas, an inmate trustee. Thomas offered defendant a cigarette, and defendant began talking about the shooting. This conversation lasted only a few minutes. However, later, during a second conversation, defendant told Thomas some details of the shooting. Thomas left defendant to get some coffee and told the sheriff of McPherson County of the conversation. The sheriff told Thomas to write down what he remembered of the conversation. Thomas then spoke more with defendant and later wrote down what he remembered.

As of the time of these conversations, defendant had been

charged only with assault in the first degree for the beating of Brian Moul, as discussed later in this opinion.

## ASSIGNMENTS OF ERROR

Defendant asserts that the trial court erred when it (1) overruled defendant's motion to suppress statements made to a jail trustee and to law enforcement officers; (2) overruled defendant's motions to hire a public opinion pollster and to change venue; (3) overruled defendant's motions to declare Neb. Rev. Stat. § 29-2006 (Reissue 1989) unconstitutional, to preclude discussion of punishment with the jury, and to preclude death qualification of the jury; (4) told the jury that the Nebraska Supreme Court would not reverse its decision; (5) overruled defendant's motion in limine to prohibit introduction into evidence of an assault alleged to have occurred the day before the acts upon which the State based its charges; (6) overruled defendant's motion in limine to prohibit the introduction of autopsy photographs into evidence because their probative value was outweighed by their prejudicial effect; (7) instructed the jury on the lesser-included offense of second degree murder after defendant requested that such an instruction not be given; (8) failed to instruct the jury that in the event it found that defendant did not have the intent necessary for a conviction of theft of an auto, it could find him guilty of the lesser-included offense of unauthorized use of a propelled vehicle; (9) failed to instruct the jury that an element of the charge of theft is proof of a finding that the property taken had a value in excess of $1,000; (10) overruled defendant's request to instruct the jury that the State had the burden of disproving that defendant acted in self-defense and that defendant did not have the burden of proving he acted in self-defense; (11) overruled defendant's motion to dismiss on grounds that the evidence was insufficient to support his conviction; (12) overruled defendant's motion for a mistrial after a witness, Jason Thomas, spoke to the jury while the trial judge and counsel were in chambers; (13) found that defendant was a habitual criminal on the basis of defendant's guilty plea to a prior felony conviction, which plea was not shown to have been freely and voluntarily entered or entered after defendant had been

informed of his constitutional rights; and (14) rendered excessive sentences.

## STANDARD OF REVIEW

With regard to those issues concerning the propriety of jury instructions, we note that all the jury instructions must be read together, and if taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *Kozeny v. Miller*, 243 Neb. 402, 499 N.W.2d 75 (1993).

The abuse of discretion standard is applied to our review of the trial court's ruling on the mistrial, the sentence imposed, the admissibility of evidence of other conduct, the admission of the photographs, and the ruling on the motion to change venue. See, *State v. Clancy*, 224 Neb. 492, 398 N.W.2d 710 (1987) (review of mistrial); *State v. Ellen*, 243 Neb. 522, 500 N.W.2d 818 (1993) (review of sentence); *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991) (review of trial court's ruling on evidence of other conduct); *State v. Jacobs*, 226 Neb. 184, 410 N.W.2d 468 (1987) (review of trial court's ruling on motion to change venue).

In determining the correctness of a trial court's ruling on a motion to suppress, an appellate court will uphold the trial court's factual findings unless those findings are clearly erroneous. *State v. Stott*, 243 Neb. 967, 503 N.W.2d 822 (1993).

All other issues addressed concern questions of law. When deciding questions of law, this court is obligated to reach conclusions independent of those reached by the trial court. *Petska v. Olson Gravel, Inc.*, 243 Neb. 568, 500 N.W.2d 828 (1993).

## PRETRIAL MOTIONS

### MOTION TO SUPPRESS

Defendant contends the trial court erred when it overruled his motion to suppress those statements he made to Jason Thomas, a McPherson County, Kansas, jail trustee.

Defendant contends that the law enforcement authorities in McPherson County "intentionally created a situation that was

likely to induce [defendant] to make incriminating statements." Brief for appellant at 13. He argues that Thomas, the trustee, was the unwitting pawn of the McPherson County law enforcement authorities. Defendant urges that Thomas was purposely allowed to hear what type of crime defendant was suspected of committing. Next, defendant alleges that the trustee was, by design, placed in the next cell. He also asserts that Thomas was allowed, in violation of a "jail rule," to converse with him. *Id.* at 11. Finally, because of the fact that Thomas did not serve all 60 days of his sentence, defendant maintains Thomas must have received a " 'special privilege' " for testifying. *Id.* at 16. By orchestrating this scheme, defendant argues, the government has violated his right to counsel under the 6th and 14th Amendments to the U.S. Constitution.

The U.S. Supreme Court has held that the government may not use an undercover agent to circumvent the Sixth Amendment right to counsel once a suspect has been charged with a crime. *Maine v. Moulton*, 474 U.S. 159, 106 S. Ct. 477, 88 L. Ed. 2d 481 (1985); *United States v. Henry*, 447 U.S. 264, 100 S. Ct. 2183, 65 L. Ed. 2d 115 (1980); *Massiah v. United States*, 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964).

Assuming without necessarily conceding defendant's Sixth Amendment right to counsel had attached, there could be no violation if the government did not deliberately elicit incriminating statements. See *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S. Ct. 2616, 91 L. Ed. 2d 364 (1986). Whether Thomas, the trustee, was an agent of the government is a question of fact.

Defendant's argument to the effect that the trustee was an agent of the government assumes incorrect facts and requires inferences which we are not willing to make. There was not sufficient evidence presented to support the argument that the government surreptitiously employed Thomas so as to deliberately elicit incriminating statements from defendant. The trial court was correct in its ruling on the motion to suppress.

## CHANGE OF VENUE

Defendant asserts the trial court erred by overruling his pretrial motions to hire a public opinion pollster and to change venue. He argues that pretrial publicity and community gossip denied him a fair and impartial trial.

Factors to be considered in determining whether change of venue is required due to pretrial publicity include the nature of the publicity, the degree to which the publicity has circulated throughout the community, the degree to which the publicity circulated in the area to which the venue could be changed, the length of time between the dissemination of the publicity complained of and the trial, the care exercised and ease encountered in selection of the jury, the number of challenges exercised during voir dire, the severity of the offenses charged, and the size of the area from which the venire is drawn. *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990).

Neb. Rev. Stat. § 29-1301 (Reissue 1989) states: "All criminal cases shall be tried in the county where the offense was committed . . . unless it shall appear to the court by affidavits that a fair and impartial trial cannot be had therein."

However, a trial court's ruling on a motion for change of venue will not be disturbed absent an abuse of discretion. *State v. Jacobs*, 226 Neb. 184, 410 N.W.2d 468 (1987). A trial court abuses its discretion in denying a motion to change venue where a defendant establishes that local conditions and pretrial publicity make it impossible to secure a fair trial. *Id*. Defendant contends he needed a public opinion pollster to establish such evidence to support his motion for change of venue.

In *State v. Boppre, supra*, we considered the necessity of providing an indigent defendant accused of first degree murder a public opinion pollster at the State's expense. In *Boppre*, the defendant presented evidence that numerous articles appeared in the local area newspaper reporting details concerning the investigation of the murders, the evidence discovered at the scene of the crime, the defendant's arrest, all the pretrial proceedings, and the selection of the jury. He presented several videotaped recordings of local television news shows. The defendant also submitted the affidavits of 38 residents of the county and those of 11 area attorneys stating that because of the

bias, prejudice, and hostility of area residents, the defendant would be unable to receive a fair trial in that county. Despite this evidence and despite the fact that the defendant believed he needed a public opinion pollster to support his motion for change of venue, this court found that the district court did not abuse its discretion in denying the request.

Although we acknowledged in *Boppre* that there may be circumstances under which the denial of funds for a pollster by a district court would be an abuse of discretion, we conclude that under the circumstances of this case, where no evidence to support the motion was offered, the district court did not abuse its discretion. Defendant could have offered affidavits of local residents or other evidence in support of his motion for change of venue. Absent such a record, we are not in a position to review the judge's ruling.

## DEATH QUALIFICATION OF THE JURY

Prior to trial, defendant filed a motion requesting the district court to declare § 29-2006(3) unconstitutional. He wishes us to find this section violative of the 6th and 14th Amendments to the U.S. Constitution.

In *State v. Peery*, 223 Neb. 556, 391 N.W.2d 566 (1986), we reaffirmed our earlier holding in *State v. Rust*, 223 Neb. 150, 388 N.W.2d 483 (1986), *cert. denied* 481 U.S. 1042, 107 S. Ct. 1987, 95 L. Ed. 2d 826 (1987), that § 29-2006(3) is constitutional with regard to the 6th and 14th Amendments. Since defendant fails to assert any argument that we have not previously addressed, and since he can point to no change in the law that would require us to overrule those previous decisions, we decline to do so.

However, in asserting that § 29-2006(3) violates article I, § 11, of the Nebraska Constitution, defendant does make a novel claim. For although we have held § 29-2006(3) to be constitutional under article I, § 6, of the Nebraska Constitution, we have never reviewed that statute under article I, § 11. See *State v. Peery, supra*.

Of course, the party claiming a statute is unconstitutional has the burden to show and clearly demonstrate that the questioned statute is unconstitutional. *State v. Connely*, 243

Neb. 319, 499 N.W.2d 65 (1993). In that defendant made no argument in his motion, when he objected, or in his brief which specifically addressed article I, § 11, we find that he has failed to meet his burden. See *Hamilton v. City of Omaha*, 243 Neb. 253, 498 N.W.2d 555 (1993) (absent plain error, assignments of error not discussed in the briefs will not be addressed by this court). Therefore, that issue will not be addressed.

## AT TRIAL

### COMMENTS OF THE TRIAL COURT

During jury voir dire, the trial court made the following remarks to the jury:

> We have the adversary system that means that there is a lawyer on each side — or the lawyers on each side are to do anything they can to win so long as it is consistent with the truth and with the law.
>
> And that's a part of our jury system, we believe that if both do everything they can to win, that twelve people from this community can do the best job of picking out what the truth is and arriving at a just verdict.
>
> And we have worked with that, find the juries really are very good at coming up with the right verdict at least, I don't know how they get there, but people that work are very satisfied with what jurors do. I have never said this before but I want you all to know the Supreme Court is not going to reverse your decision.
>
> Your decision is final in this matter.
>
> Now, if I give you the wrong law or I make a mistake or the laws make a mistake because we haven't given you the right information it might be reversed, and it might come back. But the Supreme Court doesn't second guess your finding of what the facts are, and how you apply the law to those facts.
>
> So that's the other thing that I wanted to tell you.
>
> It's a juror's duty to follow the law . . . and make a decision under the law even if they disagree with the law.
>
> If you disagree with the law, we have the legislature, that kind of system, to change the law. It's not a juror's duty to change that law.

Defendant contends these remarks prejudiced him by giving the members of the jury the impression that even if they did not follow the law, their decision would stand.

We have stated that trial courts are to refrain from commenting on the evidence or making remarks prejudicial to a litigant or calculated to influence the minds of the jury. *State v. Chapman*, 234 Neb. 369, 451 N.W.2d 263 (1990). However, a defendant must demonstrate that a trial court's conduct, whether action or inaction during the proceeding against the defendant, prejudiced or otherwise adversely affected a substantial right of the defendant. *Id.*

Although we believe the district court's statements, taken as a whole, are prejudicial, we believe that in the light of the overwhelming evidence against the defendant, the court's error is a harmless one. See *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

## EVIDENCE OF OTHER MISCONDUCT

Prior to trial, defendant moved to prohibit the State from introducing evidence of his assault on Brian Moul on December 26, 1991. Evidence adduced at trial showed that while defendant was at Wilma Ward's home on the evening of the 26th, Moul stopped over. Jason Thomas testified that defendant had told him that when Moul arrived at Wilma Ward's home, defendant did not say anything to him, but just started hitting him. Thomas also testified that defendant told him he hit Moul about five times, but that Moul "wouldn't go down." According to Thomas, defendant said he, therefore, picked up a brick and hit Moul in the face with it until Moul fell down. Thomas also testified that defendant said he was mad at Moul for being too friendly with defendant's girl friend.

When such evidence was offered at trial, defendant objected, but his objection was overruled. Defendant argues that admission of the evidence was a violation of Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 1989).

Admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in admissibility of evidence. *Petska v. Olson Gravel, Inc.*, 243 Neb. 568, 500 N.W.2d 828

(1993).

Rule 404(2) is an inclusionary rule permitting the use of relevant other crimes, wrongs, or acts for all purposes except to prove the character of a person in order to show that such person acted in conformity with that character. *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991). Evidence of other crimes or acts may be admitted where the evidence is so related in time, place, and circumstances to the offense charged as to have substantial probative value in determining the accused's guilt of the offense in question. *State v. Kern*, 224 Neb. 177, 397 N.W.2d 23 (1986).

The admissibility of evidence concerning other conduct under the provisions of rule 404(2) must be determined upon the facts of each case; no exact limitation of time can be fixed as to when other conduct tending to prove intent to commit the offense charged is remote. *State v. Rincker*, 228 Neb. 522, 423 N.W.2d 434 (1988). It is within the discretion of the trial court to determine admissibility of evidence of other wrongs or acts, and the trial court's decision will not be reversed absent abuse of that discretion. *State v. Bronson*, 242 Neb. 931, 496 N.W.2d 882 (1993). However, rule 404(2) is subject to the overriding protection of Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1989). *State v. Clancy*, 224 Neb. 492, 398 N.W.2d 710 (1987). While proof of motive is not an element of first degree murder, any motive for the crime charged is certainly relevant to the State's proof of the intent element. *State v. Bronson, supra*.

The incident with Moul occurred the day before the incident in which the victim was killed. The State asserts that the events of the day before helped explain defendant's anger at Penny Ward and her friends and tended to show he was jealous of her friends. These are factors which lent themselves to proof of intent and premeditation. The trial court did not abuse its discretion in admitting evidence of the assault on Moul.

### INTRODUCTION OF PHOTOGRAPHS

Defendant maintains the district court erred when it overruled his motion in limine and objection at trial to prohibit the introduction of autopsy photographs into evidence. Defendant contends the photographs, showing the external

injuries of the victim, should have been excluded because their probative value was outweighed by their prejudicial effect.

We addressed the issue of "gruesome" photographs in *State v. Rowe*, 210 Neb. 419, 315 N.W.2d 250 (1982). In *Rowe*, we said the admission of photographs of a gruesome nature rests largely within the discretion of the trial court, which must determine their relevancy and weigh their probative value against their possible prejudicial effect. We also said that in a homicide case, photographs of the victim, upon a proper foundation, may be received in evidence for purposes of identification, to show the condition of the body, to show the nature and extent of the wounds or injuries, and to establish malice or intent.

Defendant offered into evidence photographs of the victim at the crime scene. They do not, however, show the nature and extent of the wounds or injuries. The autopsy photos are necessary to understand this information. The district court did not abuse its discretion in admitting the autopsy photographs into evidence.

## JURY INSTRUCTIONS

### LESSER-INCLUDED OFFENSES

To constitute a lesser-included offense, the elements of the lesser offense must be such that it is impossible to commit the greater without at the same time having committed the lesser. *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993). Accord *State v. Pribil*, 224 Neb. 28, 395 N.W.2d 543 (1986). In determining whether a lesser offense is indeed a lesser-included one, a court initially does not look to the evidence in a particular case, but, rather, as the name of the statutory-elements rule implies, looks only to the elements of the criminal offense. *State v. Williams, supra*. However, once it is determined that an offense is a lesser-included one, a court must examine the evidence to determine whether it justifies an instruction on the lesser-included offense by producing a rational basis for a verdict acquitting defendant of the offense charged and convicting him of the lesser offense. *Id*. Consequently, a court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction

is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *Id.*

Defendant complains that the trial court failed to instruct the jury that in the event it found that defendant did not have the intent necessary for a conviction of theft of an auto, it could find him guilty of the lesser-included offense of unauthorized use of a propelled vehicle. This argument fails, however, because unauthorized use of a propelled vehicle is not a lesser-included offense of theft.

Neb. Rev. Stat. § 28-511 (Reissue 1989), theft by unlawful taking or disposition, provides, in pertinent part:

(1) A person is guilty of theft if he or she takes, or exercises control over, movable property of another with the intent to deprive him or her thereof.

(2) A person is guilty of theft if he or she transfers immovable property of another or any interest therein with the intent to benefit himself or herself or another not entitled thereto.

Neb. Rev. Stat. § 28-516 (Reissue 1989), unauthorized use of a propelled vehicle, provides, in pertinent part: "(1) A person commits the offense of unauthorized operation of a propelled vehicle if he intentionally exerts unauthorized control over another's propelled vehicle by operating the same without the owner's consent."

A brief examination of these statutes reveals that unauthorized use of a propelled vehicle is not a lesser-included offense of theft by unlawful taking or disposition. To be guilty of violating § 28-516, one must operate a propelled vehicle. The operation of a propelled vehicle is not necessary for a violation of § 28-511. One can violate § 28-511 merely by exercising control over another's property. See *State v. Baker*, 231 Neb. 144, 435 N.W.2d 202 (1989) (unauthorized use of a propelled vehicle held not to be a lesser-included offense of theft by receiving stolen property because theft by receiving stolen property would not require the operation of a propelled vehicle).

Defendant also claims the district court erred when it instructed the jury on the lesser-included offense of second degree murder after defendant requested that such an instruction not be given. He argues that a defendant wishing to take the risk of an "all or nothing" verdict should be allowed to.

However, it is the duty of the trial court to instruct the jury as to the law applicable to the case. Neither the defense nor the prosecution has the option of precluding the court from carrying out this duty in hopes of forcing an "all or nothing" verdict. *State v. Pribil*, 224 Neb. 28, 395 N.W.2d 543 (1986). The trial court may instruct a jury, over a defendant's objection, on any lesser-included offenses supported by the evidence and the pleadings. *Id.* We decline to create an exception for those cases in which no more serious crime could be charged.

## INSTRUCTION ON THEFT

Defendant argues that the district court erred when it failed to instruct the jury that an element of the charge of theft is proof that the property taken had a value in excess of $1,000. No cases are cited in support of this position.

In *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992), we explicitly held that value is not an element of theft. However, we also held in *Garza* that the State must prove, beyond a reasonable doubt, the value of the property which is the subject of the theft charge. In the case at bar, the district court instructed the jury that "the State must prove beyond a reasonable doubt . . . [t]he market value of such automobile." The verdict form returned by the jury reveals that the jury determined the automobile in question had a market value of $24,052. Thus, defendant's claim is without merit.

## INSTRUCTION ON SELF-DEFENSE

Defendant complains the trial court erred when it overruled his request to instruct the jury that the State had the burden of disproving defendant acted in self-defense and that defendant did not have the burden of proving he acted in self-defense. This complaint is also without merit. The district court instructed the jury that it was the State's burden to prove defendant did not act in self-defense. We do not believe that,

after telling the jury the State has the burden of proving the defendant did not act in self-defense, it is necessary to tell the jury it is not the defendant's burden. The instructions given correctly state the law.

## POSTTRIAL

### SUFFICIENCY OF THE EVIDENCE

Defendant maintains the district court erred when it overruled defendant's motion to dismiss on grounds that the evidence was insufficient to support his conviction.

In determining whether evidence is sufficient to sustain a conviction in a jury trial, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented to the jury, which are within a jury's province for disposition. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict. Moreover, on such a claim, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *State v. Connely*, 243 Neb. 319, 499 N.W.2d 65 (1993).

The evidence, when viewed in a light most favorable to the State, establishes that on December 27, 1991, defendant, while not acting in self-defense, intentionally killed Patricia Cool. It also establishes that he proximately caused the death of Cool by using a firearm. The evidence further establishes that defendant took and exercised control over a movable 1992 Oldsmobile, which was owned by Ray and Helen Holroyd, with the intent to deprive them of that automobile and that the automobile had a market value of $24,052. The evidence presented at trial was sufficient to convict defendant, consistent with the jury's verdict.

### MOTION FOR MISTRIAL

Finally, defendant asserts that the district court erred when it overruled his motion for a mistrial after a witness, Jason

Thomas, spoke to the jury while the trial judge and counsel were in chambers. The record reveals that Thomas said something to the effect of "I'm so nervous." Apparently, some of the jurors acknowledged the comment and uttered a laugh. The trial court then instructed the jury that Thomas' statement was not evidence and that the jury should disregard it.

In a criminal case, misconduct involving an improper communication between a nonjuror and a juror gives rise to a rebuttable presumption of prejudice which the State has the burden to overcome. *State v. McDonald*, 230 Neb. 85, 430 N.W.2d 282 (1988).

A mistrial is properly declared when an event occurs during the course of a trial which is of such a nature that its damaging effects cannot be removed by proper admonition or instruction to the jury and would thus result in preventing a fair trial. Whether to grant a mistrial is a matter within the discretion of the trial court, whose ruling regarding a mistrial will be upheld unless such ruling constitutes an abuse of discretion. *State v. Clancy*, 224 Neb. 492, 398 N.W.2d 710 (1987).

Given the nature of the comment and the fact that the jury was admonished to disregard it, we cannot say the trial court abused its discretion in overruling the motion for mistrial.

### HABITUAL CRIMINAL

Defendant next complains that the trial court erred when it found that he was a habitual criminal on the basis of his guilty plea to a prior felony conviction. He claims it was not shown to have been freely and voluntarily entered after he was informed of his constitutional rights.

We have held that in an enhancement proceeding, the State need only show that at the time of the prior conviction the defendant had, or waived, counsel. *State v. Johns*, 233 Neb. 477, 445 N.W.2d 914 (1989).

Defendant argues that *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), requires that the State, in an enhancement proceeding, show that the defendant knowingly, intelligently, and understandingly waived his privilege against compulsory self-incrimination, right to trial by jury, and right to confront his accusers at the time he entered his

guilty plea. In *Parke v. Raley*, ____ U.S. ____, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992), the Court held that *Boykin* does not require the State to prove those things in an enhancement proceeding. The Court stated:

> *Boykin* involved direct review of a conviction allegedly based upon an uninformed guilty plea. Respondent, however, never appealed his earlier convictions. They became final years ago, and he now seeks to revisit the question of their validity in a separate recidivism proceeding. To import *Boykin's* presumption of invalidity into this very different context would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the "presumption of regularity" that attaches to final judgments, even when the question is waiver of constitutional rights.

*Parke v. Raley*, 113 S. Ct. at 523. We reaffirm our holding in *State v. Johns, supra.* The State did show that defendant had, or waived, counsel. Defendant's argument is without merit.

### EXCESSIVE SENTENCES

Defendant was sentenced to life imprisonment for the second degree murder conviction. His sentence for use of a firearm to commit a felony was 10 years. He was sentenced to 1 year in prison for theft of an auto. His sentences for use of a firearm to commit a felony and theft of an auto are to run consecutively, but concurrently with his sentence for second degree murder. The habitual criminal conviction merged with the second degree murder conviction.

In reviewing these sentences, we note plain error. The trial court determined that the 10-year sentence for use of a firearm to commit a felony was to run concurrently with the life sentence for second degree murder. However, we have held Neb. Rev. Stat. § 28-1205(3) (Reissue 1989) mandates that any sentence for use of a firearm to commit a felony run consecutively to any sentence imposed for the predicate felony. *State v. Trevino*, 230 Neb. 494, 432 N.W.2d 503 (1988). See, also, *State v. Egger*, 234 Neb. 175, 449 N.W.2d 558 (1989).

### CONCLUSION

After consideration of defendant's 14 assignments of error,

we find only the error in the sentencing. We therefore remand this cause solely for resentencing pursuant to § 28-1205(3).

REMANDED WITH DIRECTIONS.