STATE OF NEBRASKA, APPELLEE, V.
HAROLD L. WILSON, APPELLANT.
556 N.W.2d 643

Filed November 19, 1996.   No. A-95-1351.

Dennis R. Keefe, Lancaster County Public Defender, and Kristi J. Egger for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

IRWIN, SIEVERS, and INBODY, Judges.

IRWIN, Judge.

## I. INTRODUCTION

This appeal arises from Harold L. Wilson's convictions of attempted second degree murder, third degree assault, and use of a weapon in the commission of a felony. On appeal, Wilson contends the district court erred in overruling his plea in bar, in overruling his motion to suppress both photographic and in-court identifications, in overruling his motion in limine concerning statements he made to his girl friend, in denying him a "full and fair hearing" on the admissibility of evidence of a prior crime pursuant to Neb. Evid. R. 404(3), Neb. Rev. Stat. § 27-404(3) (Reissue 1995), in allowing enlarged photographs of the victim into evidence, in denying his motion to dismiss at the end of the State's case, in denying his motion for new trial, and in imposing excessive sentences. For the reasons set forth herein, we affirm.

## II. BACKGROUND

On July 11, 1994, an information was filed charging Wilson with attempted second degree murder, first degree assault, and use of a weapon in the commission of a felony. The crimes charged resulted from an attack on Kimberly Gentrup, an employee of a Little King restaurant in Lincoln, Nebraska, on May 9, 1994. On October 4, the State filed a request for leave to amend the information to add an additional count of use of a weapon in the commission of a felony, which was granted after a hearing on October 18. At his arraignment, Wilson pled not guilty to all counts.

Prior to trial, Wilson filed a plea in bar, numerous motions in limine, and a motion to suppress photographic identifications. Specifically, Wilson filed a motion in limine seeking to prevent the State from producing testimony at trial about a prior attack on a convenience store worker, Peggy Kinney, on May 8, 1994, in Crete, Nebraska. This prior attack was the subject of a separate prosecution and conviction, and the attempted second degree murder conviction from that case was affirmed by this court in *State v. Wilson*, 4 Neb. App. 489, 546 N.W.2d 323 (1996) (*Wilson I*). *Wilson I* was on appeal to this court at the

time of the prosecution in the present case. Details of Wilson's attack of Kinney are contained in *Wilson I.*

On September 6, 1995, a hearing was held on Wilson's various motions in limine. During the hearing, the State disclosed that pursuant to § 27-404(2), it intended to produce testimony at trial concerning the assault on Kinney in Crete. Wilson's attorney then argued that Wilson was entitled to a full evidentiary hearing on the admissibility of such evidence, pursuant to § 27-404(3). The State argued that a full evidentiary hearing was unnecessary. In support of the admissibility of the § 27-404 evidence, the State offered a transcription of Kinney's testimony during the prosecution of the Crete attack and requested the district court to take judicial notice of testimony provided during the hearing on Wilson's motion to suppress the photographic identifications in the instant case. The court received the transcription of Kinney's testimony and agreed to take judicial notice of the suppression testimony, both over the objection of Wilson's attorney. Although the court offered Wilson an opportunity to present evidence, Wilson declined to do so.

In an order dated October 5, 1995, the district court overruled Wilson's motion in limine regarding testimony about the Crete assault. The court found that "evidence regarding the 'Crete Case' is admissible . . . to prove motive, intent, preparation, plan and identity or absence of mistake or accident." The court further found that there was clear and convincing evidence that the defendant committed the Crete crime and that the probative value of the evidence outweighed any danger of unfair prejudice.

A jury trial was held on October 23 through October 30, 1995. At trial, the victim, Gentrup, testified that she was employed at a Little King restaurant in Lincoln on May 9, 1994. Gentrup testified that she worked at Little King on Monday nights only, from 5 p.m. to close. On May 9, Gentrup was working with another employee, Syed Iftikhar, when Wilson entered the restaurant at approximately 8:15 p.m. Wilson spoke to Iftikhar, used the restaurant's phonebook, and left. Wilson returned, used the phonebook again, and left again. Wilson then returned to the restaurant, inquired about the hours of operation, and placed an order with Iftikhar for a sandwich and a beverage. Gentrup testified that Wilson was only a few feet away from her

while he placed his order and that he proceeded to sit and eat his sandwich in the restaurant.

Gentrup testified that she told Iftikhar he could go home for the evening because there were no other customers in the restaurant and it was almost time to close the restaurant for the evening. After Iftikhar left, Wilson ordered another sandwich. Gentrup testified that she began to make the sandwich, but was delayed when she heard the drive-through buzzer sound. Gentrup walked to the microphone for the drive-through and told the customer waiting at the drive-through that she would be with the customer in a minute, then returned to complete Wilson's sandwich.

As Gentrup bent down to get cheese for Wilson's sandwich out of a refrigerator that was located underneath the counter, she was attacked. Gentrup testified that Wilson grabbed her from behind and started cutting her neck with a knife. Wilson was holding the knife in his left hand, and Gentrup estimated that she felt the cutting motion on her neck approximately 10 times. After cutting her neck, Wilson attempted to stab Gentrup in the back three or four times, then attempted to stab her in her chest area. Gentrup also suffered a laceration on the back of her left arm as she attempted to block Wilson from cutting her throat again. Gentrup testified that Wilson stopped abruptly and ran out the door. Wilson did not say anything to her during the attack, did not demand any money, and made no attempt to steal anything from the store.

During her testimony, Gentrup further identified Wilson as the perpetrator, both through an in-court identification and through testimony about her identification of Wilson from a photographic array shown to her the day after the attack. Gentrup identified the clothing Wilson was wearing when arrested as being the same clothing that her attacker wore. Finally, Gentrup identified a knife found within one block of the restaurant as being a knife that she had been using in the preparation of Wilson's sandwich prior to the attack.

The State provided further testimony from Iftikhar, from the doctor who treated Gentrup's injuries, from the police officer who showed the photographic array to Gentrup, from the officer who conducted the investigation of the crime scene, and

from a forensic serologist who testified that some blood found on Wilson's clothing was of a type other than his own. Gentrup's treating physician testified that the cut on her neck was approximately 4 inches long and $3/4$ to 1 inch deep and was within $1/4$ inch of cutting the major vessels of the neck, the carotid artery and the jugular vein. The State then adduced evidence from Kinney regarding a similar incident that occurred to Kinney while she was working at a convenience store in Crete. This testimony was admitted over Wilson's continuing objection on the basis of the § 27-404 hearing.

Kinney testified that she was working alone at a Crete convenience store named "First & Last Stop" in the early morning hours of May 8, 1994. Kinney testified that Wilson was the store's first customer of the day and that he entered the store at approximately 6:30 a.m. After Wilson entered the store, he walked around for a few minutes, picked up a bag of chips, and placed the bag on the counter. She testified that Wilson left the store to go to his car and get money.

When Wilson returned, he was walking toward Kinney very quickly. Wilson then grabbed Kinney's hair with his right hand, pulled her head down behind the counter, and stabbed her in the neck six or seven times with some kind of sharp instrument. During this attack, Wilson did not say anything to Kinney. Kinney eventually told Wilson to take the money in the cash register, at which time Wilson let go of her, grabbed the money, and ran out of the store. Kinney testified that she would never forget the face of her attacker, and she identified Wilson as being the perpetrator.

Wilson took the stand in his own defense, testifying that he did not attack Gentrup. Wilson testified that he was at the Little King restaurant on the night in question and that he did order the second sandwich which Gentrup testified that she was preparing at the time of the attack. However, Wilson testified that he had to go out to his car to get some money and that upon returning, he ran into an individual leaving the store carrying what he believes was a knife. At this time, Wilson alleges, his hand was cut by the other individual. Wilson testified that he heard somebody screaming inside the restaurant, so he took off

running to avoid "get[ting] hemmed up with something [he] didn't do."

The jury returned a verdict convicting Wilson of attempted second degree murder, third degree assault, and one count of use of a weapon in the commission of a felony. The district court sentenced Wilson to 30 to 50 years' imprisonment for the attempted second degree murder conviction, 1 year's imprisonment for the third degree assault conviction, and 10 to 20 years' imprisonment for the use of a weapon conviction, all to be served consecutively to each other and consecutively to any other time Wilson was already serving for separate convictions. This appeal timely followed.

## III. ASSIGNMENTS OF ERROR

On this appeal, Wilson has assigned the following errors from the proceedings in the district court: (1) that the district court violated his rights against double jeopardy, (2) that the district court erred in overruling his motion to suppress identification evidence, (3) that the district court erred in overruling his motion in limine concerning statements he made to his girl friend, (4) that the district court erred in failing to provide a full and fair evidentiary hearing concerning the admissibility of evidence about the Crete assault, (5) that the district court erred in allowing enlarged photographs of the victim into evidence, (6) that the district court erred in overruling his motion to dismiss at the end of the State's case, (7) that the district court erred in denying his motion for new trial, and (8) that the district court imposed excessive sentences.

## IV. ANALYSIS

### 1. DOUBLE JEOPARDY

Prior to trial, Wilson filed a plea in bar asserting that his constitutional rights against double jeopardy were being violated because he was charged with both attempted second degree murder and first degree assault arising out of his alleged attack on Gentrup. The district court overruled Wilson's plea in bar. On appeal, Wilson asserts that the district court erred in overruling the plea in bar and also asserts that his double jeopardy rights were further violated because he was convicted of and

sentenced on both attempted second degree murder and third degree assault.

Neb. Rev. Stat. § 29-1817 (Reissue 1995) provides that a plea in bar may be offered alleging that the defendant "has before had judgment of acquittal, or been convicted, or been pardoned for the same offense." The statute does not specifically authorize a defendant to raise, pretrial, a plea in bar alleging the risk of multiple punishments. The statute is confined to the factual scenario where an initial trial has been completed, ending with an acquittal, conviction, or mistrial, and a second trial has been commenced involving the same or a similar offense. See, e.g., *State v. Milenkovich*, 236 Neb. 42, 458 N.W.2d 747 (1990). As a result, Wilson was premature in filing his plea in bar, and the district court properly overruled it.

Additionally, with regard to whether prosecution of Wilson for both attempted second degree murder and first degree assault and the multiple punishments which Wilson received for his convictions of attempted second degree murder and third degree assault run afoul of double jeopardy principles, we are guided by well-established principles of constitutional law concerning double jeopardy. See, U.S. Const. amend. V; Neb. Const. art. I, § 12; *State v. Smith*, 3 Neb. App. 564, 529 N.W.2d 116 (1995). The test for determining whether attempted second degree murder and third degree assault constitute the "same offense," such that multiple punishments would be prohibited, has been set forth by the U.S. Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which states:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is *whether each provision requires proof of a fact which the other does not.*

(Emphasis supplied.) The *Blockburger* test was readopted by the Court in *United States v. Dixon*, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993).

Under the principles of *Blockburger* and *Dixon*, if *each* offense contains an element that is not contained in the other, then they are not the "same offense" and double jeopardy does

*not* bar successive prosecution or multiple punishments. See *State v. Smith, supra.* In *Smith*, this court discussed at some length whether or not successive prosecution for attempted second degree murder and first degree assault violated double jeopardy principles.

In *Smith*, we concluded that actual injury, a necessary element of the crime of first degree assault, is not a necessary element of the crime of attempted second degree murder and that malice and intent to kill, necessary elements of the crime of attempted second degree murder, are not necessary elements of the crime of first degree assault. As a result, each offense requires proof of an element which the other does not, and double jeopardy principles are not violated by prosecuting a defendant for both crimes. See *State v. Smith, supra.* Consequently, even if Wilson's plea in bar were deemed to have been timely, the district court would not have erred by overruling the motion.

Similarly, either actual bodily injury or a threat delivered in a menacing manner is a necessary element of the crime of third degree assault, but not of the crime of attempted second degree murder, while malice and intent to kill are necessary elements of the crime of attempted second degree murder, but not of the crime of third degree assault. See, Neb. Rev. Stat. §§ 28-201, 28-304, and 28-310 (Reissue 1995); *State v. Smith, supra.* As a result, each of these offenses also requires proof of an element which the other does not. Consequently, Wilson's eventual convictions and multiple punishments for these two offenses do not violate double jeopardy principles. This assigned error is without merit.

### 2. IDENTIFICATIONS

Wilson asserts that the photographic identifications in this case were unduly suggestive and that Wilson was, therefore, denied due process. Additionally, Wilson asserts that any in-court identifications were likewise tainted and should have been ruled inadmissible by the district court.

In regard to photographic arrays, the Nebraska Supreme Court has held that whether identification procedures are unduly suggestive and conducive to a substantial likelihood of

irreparable mistaken identification is to be determined by a consideration of the totality of the circumstances surrounding the procedures. See *State v. Gibbs*, 238 Neb. 268, 470 N.W.2d 558 (1991). Among the factors to be considered are the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness, and the length of time between the crime and the identification. See *State v. Newman*, 4 Neb. App. 265, 541 N.W.2d 662 (1996). With regard to an in-court identification, the test is whether the witness' identification at trial is supported, independently, by the witness' observations at the time of the robbery.

Our review of the photographic lineup used in the pretrial identifications in the present case leaves us at a loss to see what Wilson allegedly sees as unduly suggestive. Although the photographs were obviously of separate individuals with individual and unique characteristics who, therefore, did not look exactly alike, the array was not unduly suggestive. Upon consideration of the totality of the circumstances in this case, it is apparent to us that the witnesses who identified Wilson from the photographic lineup had ample opportunity to view Wilson at the time of the attacks, the witnesses provided accurate prior descriptions of the perpetrator which coincided with Wilson's actual appearance, the witnesses were attentive at the time of the attacks and were able to express reasonable certainty in choosing Wilson from the lineup, and the identifications from the lineup were conducted in close proximity of time to the attacks. We find that the photographic lineup in this case was not unduly suggestive and conducive to a substantial likelihood of irreparable mistaken identification.

Even if the photographic array had been somehow improper, the witnesses identified Wilson during the trial as well. The in-court identifications were completely supported by the witnesses' observations at the time of the attacks. In that regard, the totality of the circumstances supports the finding of the trial court that the identifications were based on the witnesses' observations of Wilson at the time of the attacks.

■ A trial court's ruling on a motion to suppress is to be upheld on appeal unless the court's findings of fact are clearly erroneous. *State v. Williams*, 249 Neb. 582, 544 N.W.2d 350 (1996); *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83 (1996); *State v. Coleman*, 241 Neb. 731, 490 N.W.2d 222 (1992). The trial court's findings with regard to the identifications in this case were not clearly erroneous, and this assigned error is without merit.

### 3. MOTION IN LIMINE

Wilson asserts that the district court erred in overruling his motion in limine concerning statements he made to his girl friend, Laura Liegh. Specifically, testimony was elicited from Liegh concerning statements Wilson had previously made about wondering how it would feel to kill somebody or what it would be like to kill somebody. Wilson argues that the motion in limine should have been granted because the statements were hearsay and were unfairly prejudicial.

■ It is a fundamental rule of evidence that a statement is not hearsay if it is offered against a party and is the party's own statement. See, Neb. Evid. R. 801(4)(b)(i), Neb. Rev. Stat. § 27-801(4)(b)(i) (Reissue 1995); *State v. Sims*, 244 Neb. 771, 509 N.W.2d 6 (1993); *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990). As a result, Wilson's statements to Liegh, offered against him at trial, were not hearsay.

Evidence which is otherwise admissible may be excluded if its probative value is substantially outweighed by other considerations. Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995); *State v. Wood*, 245 Neb. 63, 511 N.W.2d 90 (1994). In determining whether the probative value of testimony outweighs its potential for unfair prejudice, the Nebraska Supreme Court has noted that most evidence offered against a defendant is prejudicial, and it is unfairly prejudicial only if it tends to suggest a decision on an improper basis. *State v. Wood, supra.* Wilson cites, and our review reveals, nothing in the record which would suggest that the statements caused the jury to convict him on an improper basis. Any prejudice resulting from the statements was not unfair and did not substantially outweigh the probative value of the statements.

#### 4. § 27-404(3) Hearing

Wilson argues that the § 27-404(3) hearing which was afforded him in this case denied him the right to a full and fair hearing. Wilson argues that the rules of evidence should have been applied at the hearing and that he was entitled to protection of his rights to cross-examination and confrontation.

#### (a) § 27-404(3)

■ Section 27-404 provides for the admissibility of evidence of other crimes, wrongs, or acts for purposes other than to show that a person acted in conformity with his or her character. § 27-404(2). Such evidence may be admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Section 27-404(3) provides:

> When such evidence is admissible pursuant to this section, in criminal cases evidence of other crimes, wrongs, or acts of the accused may be offered in evidence by the prosecution if the prosecution proves to the court by clear and convincing evidence that the accused committed the crime, wrong, or act. Such proof shall first be made outside the presence of any jury.

#### (b) Applicability of Evidence Rules

■ Wilson argues that the evidence rules should apply to a hearing conducted by the court pursuant to § 27-404(3). Neb. Evid. R. 1101, Neb. Rev. Stat. § 27-1101 (Reissue 1995), provides that the evidence rules apply generally to all civil and criminal proceedings before the district courts, except that the rules, other than the privilege rules, do not apply in the situations enumerated in § 27-1101(4). Section 27-1101(4) provides that the rules do not apply in "[p]roceedings for extradition or rendition; preliminary examinations or hearings in criminal cases; sentencing or granting or revoking probation; issuance of warrants for arrest; criminal summonses, and search warrants; and proceedings with respect to release on bail or otherwise."

■ Because § 27-1101 provides that the rules "apply generally to *all* civil and criminal proceedings" except proceedings specifically excepted from the rule, and because a § 27-404(3)

hearing is not excepted from the rule, we hold that the evidence rules do apply at such a hearing. (Emphasis supplied.) The State argues that a § 27-404(3) hearing is excepted because § 27-1101(4)(b) provides, inter alia, that the rules do not apply to "preliminary examinations or hearings in criminal cases."

Contrary to the State's assertion, we read § 27-1101(4)(b) to mean that the rules do not apply at a preliminary examination or a *preliminary* hearing, and not to mean that the rules are inapplicable at a preliminary examination or *any* hearing in a criminal case. The latter interpretation would mean that the rules of evidence do not apply in any criminal hearings, including hearings on motions to suppress. Taken to its extreme, this interpretation would also mean that, to the extent the trial is a "hearing in criminal cases," the rules of evidence are inapplicable at the trial itself. For obvious reasons, we decline to adopt such an interpretation.

### (c) Evidence in Wilson's Hearing

Having concluded that the evidence rules should apply in a § 27-404(3) hearing, we will examine the "evidence" received at the hearing and determine if it was received in accordance with the evidence rules. The district court received as an exhibit a transcription of Kinney's testimony from the prosecution of the Crete assault and took judicial notice of the testimony given by Kinney and Gentrup during the hearing on Wilson's motion to suppress in the instant case.

#### *(i) Transcription of Kinney's Crete Testimony*

A statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted is hearsay. § 27-801. According to Neb. Evid. R. 802, Neb. Rev. Stat. § 27-802 (Reissue 1995), hearsay is not admissible except as provided in the evidence rules. A review of these rules reveals that the transcription of Kinney's testimony from the Crete trial was inadmissible hearsay.

The transcription of Kinney's testimony constituted a statement made by Kinney outside the trial or hearing at which it was offered. This testimony was offered in furtherance of the

State's obligation under § 27-404(3) to prove by clear and convincing evidence that Wilson committed the Crete assault, so the statement was clearly offered to prove the truth of the matter asserted, namely, that Wilson assaulted Kinney in a manner similar to the assault of Gentrup. As such, the statement was inadmissible under the evidence rules unless the rules provide an exception to the hearsay rule.

█ Neb. Evid. R. 804(2)(a), Neb. Rev. Stat. § 27-804(2)(a) (Reissue 1995), provides an exception to the hearsay rule for testimony given as a witness at another hearing of the same or a different proceeding against a party with an opportunity to develop the testimony by direct, cross-, or redirect examination, if the party had a motive and interest similar to those of the party against whom the statement is now being offered. Section 27-804 requires, as a prerequisite to the admissibility of such a statement, however, that the witness be deemed legally unavailable to testify in the proceeding at which the prior testimony is offered. § 27-804(1). The record does not indicate that Kinney was in any way unavailable pursuant to § 27-804(1), and the exception is thus inapplicable to the present case. The transcription of the testimony from the Crete case was therefore inadmissible hearsay.

### (ii) Judicial Notice of Suppression Testimony

The district court also took judicial notice of the testimony of Kinney and Gentrup from a prior suppression hearing held in the present case. The Nebraska Supreme Court has discussed at length the subject of judicial notice. See, e.g., *In re Interest of N.M. and J.M.*, 240 Neb. 690, 484 N.W.2d 77 (1992); *In re Interest of C.K., L.K., and G.K.*, 240 Neb. 700, 484 N.W.2d 68 (1992); *In re Interest of S.B.E. et al.*, 240 Neb. 748, 484 N.W.2d 97 (1992); *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990); *State v. Norwood*, 203 Neb. 201, 277 N.W.2d 709 (1979).

█ Neb. Evid. R. 201, Neb. Rev. Stat. § 27-201 (Reissue 1995), governs judicial notice in Nebraska. According to § 27-201, a court may take judicial notice at any stage of the proceeding. However, a judicially noticed fact must be one not subject to reasonable dispute, in that it is either generally

known within the territorial jurisdiction of the court or capable of accurate and ready determination by resort to a source whose accuracy cannot reasonably be questioned. § 27-201(2). The Supreme Court has noted that " '[a]s a subject for judicial notice, existence of court records and certain judicial action reflected in a court's record are, in accordance with Neb. Evid. R. 201(2)(b), facts which are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.' " *In re Interest of C.K., L.K., and G.K.,* 240 Neb. at 708, 484 N.W.2d at 73 (quoting *Gottsch v. Bank of Stapleton, supra*).

The Supreme Court has drawn a clear distinction, however, between a court's judicially noticing its own proceedings and judgments where matters have been considered and determined and judicially noticing controverted facts. See *In re Interest of N.M. and J.M., supra.* Although a court may take judicial notice of its own proceedings and judgments where the same matters have been previously considered and determined in the case, see *State v. Norwood, supra,* when the matters being raised differ from the matters being raised in the previous proceeding and the request is for the court to take judicial notice of controverted facts, judicial notice is improper, see *In re Interest of N.M. and J.M., supra.* A trial court is not allowed to take judicial notice of disputed facts. *Id.*

In the present case, the matter before the court was whether there existed clear and convincing evidence that Wilson perpetrated a similar assault on Kinney in Crete. The court was requested to take judicial notice of testimony from a suppression hearing. Such judicial notice as was taken by the trial court in this case constituted judicial notice of controverted facts, namely, whether or not Wilson assaulted Kinney. Judicial notice was improper, and the testimony from the suppression hearing was improperly considered by the trial court in the § 27-404(3) hearing.

### (d) Resolution

Under § 27-404(3), the State bears the burden of proving by clear and convincing evidence that the accused committed the prior crime, wrong, or act. In the present case, the State failed

to produce any admissible evidence at the § 27-404(3) hearing and therefore failed to satisfy the burden of proof established by the statute. As such, the court erred in admitting testimony at trial concerning the prior crime.

In a jury trial of a criminal case, whether an error in admitting evidence reaches a constitutional dimension or not, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Flores*, 245 Neb. 179, 512 N.W.2d 128 (1994); *State v. Hughes*, 244 Neb. 810, 510 N.W.2d 33 (1993). A review of the evidence received by the court at trial reveals that the testimony of Kinney establishes, clearly and convincingly, that Wilson committed the crime against Kinney. Although the trial court failed to properly conduct the § 27-404(3) hearing by not following the rules of evidence and not requiring admissible evidence at the hearing, it is apparent that the evidence in this case would clearly have been admissible had the trial court done so. As such, on the facts and circumstances of this case, the error was harmless beyond a reasonable doubt. This assigned error is without merit.

### 5. ENLARGED PHOTOGRAPHS

At trial, several enlarged photographs of Gentrup were admitted, over Wilson's objection, to demonstrate the extent of her injuries. On appeal, Wilson asserts that the district court erred by admitting the photographs because "[s]maller photographs existed and the State deliberately chose to offer the greatly enlarged photographs to impermissibly inflame the passions of the jury." Brief for appellant at 29.

The admission of photographs of a gruesome nature rests largely within the discretion of the trial court. *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993); *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989); *State v. Parsons*, 226 Neb. 543, 412 N.W.2d 480 (1987). The gruesome nature of photographs alone will not keep them from the trier of fact, so long as the probative value of the photographs is not outweighed by their prejudicial effect. *State v. Hankins, supra*; *State v. Parsons, supra*; *State v. Threet*, 225 Neb. 682, 407 N.W.2d 766 (1987). As the Nebraska Supreme Court has noted, "[g]ruesome crimes

produce gruesome photographs." *State v. Lynch*, 215 Neb. 528, 535, 340 N.W.2d 128, 133 (1983).

The Nebraska Supreme Court has noted that photographs of the victim in a murder case are admissible to show, inter alia, the condition of the body or the nature and extent of the injuries, to establish malice or intent, or for purposes of identification. *State v. Parsons, supra*; *State v. Krimmel*, 216 Neb. 825, 346 N.W.2d 396 (1984). The photographs admitted in the present case were admitted for these purposes, were not excessively gruesome, and were not unfairly prejudicial. Wilson cites us to, and our research has revealed, no authority which suggests that "enlarged" photographs should not be admitted if "smaller" ones are available. This assigned error is without merit.

### 6. SUFFICIENCY OF EVIDENCE

Wilson has assigned three errors concerning the sufficiency of the evidence: First, that the evidence adduced at trial is insufficient to support the jury's verdict of conviction; second, that the district court erred in overruling his motion to dismiss made at the conclusion of the State's evidence; and third, that the district court erred in overruling his motion for directed verdict at the end of all evidence.

Wilson's argument concerning the sufficiency of the evidence is primarily based upon his contention that the identification testimony should have been suppressed, that his motion in limine concerning the statements made to Liegh should have been granted, and that the enlarged photographs should not have been admitted. Wilson argues that the district court should have kept those items from the jury and that the remaining evidence was insufficient to support a conviction.

We initially note that we have already determined that the district court did not err in admitting the complained-of evidence. Our review of the record reveals that the evidence was sufficient for the jury to find each of the elements of the crimes which Wilson was convicted of committing.

With regard to the motion to dismiss made by Wilson at the conclusion of the State's evidence, we note that after the district court overruled the motion, Wilson proceeded to present a

defense, call witnesses, and adduce evidence on his behalf. The Nebraska Supreme Court has indicated that a motion to dismiss for failure to make a prima facie case is substantially identical to a motion for directed verdict. *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995). A criminal defendant who moves for dismissal or for directed verdict at the close of the State's evidence and who, after the court overrules the dismissal or motion for directed verdict, proceeds with trial and introduces evidence, waives the appellate right to challenge the trial court's overruling of the motion. *State v. Morris*, 3 Neb. App. 835, 533 N.W.2d 110 (1995). As such, we will not further discuss the propriety of the district court's overruling of Wilson's motion to dismiss at the conclusion of the State's case.

Finally, Wilson assigns as error that the district court erred in overruling his motion for directed verdict at the conclusion of all evidence. However, Wilson fails to specifically argue this assigned error in his brief. Absent plain error, assignments of error not discussed in the appellant's brief will not be addressed by an appellate court. *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993). Additionally, because Wilson's motion for directed verdict was based upon the alleged insufficiency of the evidence, our finding that the evidence was sufficient also means that the district court did not err in overruling the motion for directed verdict. These assignments of error are without merit.

### 7. Motion for New Trial

Wilson asserts that the district court erred in overruling his motion for new trial. Wilson's motion for new trial was based upon the alleged insufficiency of evidence. Additionally, although Wilson has assigned this as an error, he has failed to argue this assignment in his brief. As noted above, the evidence was sufficient, and we will not further address this assignment of error because it was not discussed in Wilson's brief.

### 8. Excessive Sentences

The district court sentenced Wilson to 30 to 50 years' imprisonment for the attempted second degree murder conviction, 1 year's imprisonment for the third degree assault conviction, and 10 to 20 years' imprisonment for the use of a weapon in the

commission of a felony conviction, all to be served consecutively to each other and consecutively to any other time Wilson was already serving for separate convictions. On appeal, Wilson asserts that these sentences are excessive.

Attempted second degree murder is a Class II felony, see §§ 28-201 and 28-304, and the potential sentence under the Nebraska statutes is 1 to 50 years' imprisonment, Neb. Rev. Stat. § 28-105 (Reissue 1989). Third degree assault is a Class I misdemeanor, see § 28-310, and the potential sentence under the Nebraska statutes is 0 to 1 year's imprisonment, up to a $1,000 fine, or both, Neb. Rev. Stat. § 28-106 (Reissue 1995). Use of a weapon in the commission of a felony is a Class III felony, see Neb. Rev. Stat. § 28-1205 (Reissue 1989), and the potential sentence under the Nebraska statutes is 1 to 20 years' imprisonment, a $25,000 fine, or both, § 28-105.

The law is very clear in Nebraska that " '[a] sentence within statutory limits will not be disturbed upon appeal absent an abuse of discretion.' " *State v. Jackson*, 4 Neb. App. 413, 419, 544 N.W.2d 379, 383 (1996) (quoting *State v. Juarez*, 3 Neb. App. 398, 528 N.W.2d 344 (1995)). The sentences imposed by the district court are well within the statutory limits, and we find no abuse of discretion in the sentences. This assigned error is without merit.

## V. CONCLUSION

Finding no error which requires reversing Wilson's convictions, we affirm.

AFFIRMED.