STATE OF NEBRASKA, APPELLEE, V.
DANIEL LEE JONES, APPELLANT.

739 N.W.2d 193

Filed September 28, 2007.    No. S-06-798.

Mark A. Weber and Kylie A. Wolf, of Walentine, O'Toole, McQuillan & Gordon, for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HEAVICAN, C.J.

## INTRODUCTION

Daniel Lee Jones pled no contest to first degree murder in the stabbing death of Scott Catenacci and was sentenced to life imprisonment. After obtaining a new direct appeal through a postconviction action, Jones appeals his conviction. The primary issue presented by this appeal is whether the district court abused its discretion by not transferring Jones' case to juvenile court. We are additionally presented with the question of whether Jones' trial counsel was ineffective for recommending that Jones plead no contest to first degree murder.

## FACTUAL BACKGROUND

Jones was charged by information with first degree murder and use of a weapon to commit a felony in the death of Catenacci. The information alleged that Catenacci was murdered on or about September 29, 1998. Jones, whose date of birth is November 7, 1981, was nearly 17 years of age at the time of Catenacci's death. Jones filed several pretrial motions, including one requesting a transfer to juvenile court. His transfer motion was denied by the district court.

On March 29, 1999, as part of a plea agreement, Jones pled no contest to first degree murder in return for the dismissal of the use of a weapon charge. On June 28, Jones was sentenced to life imprisonment. Jones' first appeal was dismissed for failure to pay the statutory docket fee.[1] Jones obtained a new direct appeal through a postconviction action and now appeals his conviction and sentence.

At Jones' plea hearing, the State provided the following factual basis for the plea:

On or about the 29th day of September, 1998, at or near 2300 River Road, in Sarpy County, Nebraska — which is kind of a shrub and timber area adjacent to Haworth Park in Bellevue — the defendant . . . Jones, in concert with other defendants[,] attacked and stabbed to death Scott Catenacci. And the State would at the time of trial prove that this was a premeditated and deliberate and malicious attack, and that it had been discussed several days beforehand, and that . . . Jones stabbed . . . Catenacci several times, and that he died as a result of those stab wounds.

At this hearing, Jones acknowledged he "had knowledge enough of the plan that there was to be an attack on Scott Catenacci with knives." Jones did, however, dispute the contention that he was involved in the planning of the attack.

## ASSIGNMENTS OF ERROR

On appeal, Jones assigns that (1) he received ineffective assistance of counsel when counsel advised him to plead no contest to first degree murder and (2) the district court erred in not transferring the case to juvenile court.

## STANDARD OF REVIEW

■ A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion.[2]

---

[1] *State v. Jones*, 258 Neb. xxii (No. S-99-957, Nov. 10, 1999).

[2] *State v. McCracken*, 260 Neb. 234, 615 N.W.2d 902 (2000), *abrogated on other grounds, State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002).

## ANALYSIS

*Ineffective Assistance of Counsel.*

In his first assignment of error, Jones argues that his counsel was ineffective for recommending that Jones plead no contest to first degree murder when there was evidence that his actions did not rise to the level of first degree murder. In response, the State asserts that the record is not adequate to review Jones' ineffective assistance claim.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[3] the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.[4] Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. When the issue has not been raised or ruled on at the trial court level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal.[5]

We concur with the State that this record is not sufficient to address Jones' claim of ineffective assistance of counsel. We therefore do not further address Jones' first assignment of error.

*Motion to Transfer to Juvenile Court.*

In his second assignment of error, Jones argues that the district court erred in not transferring his case to juvenile court. A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion.[6] In determining whether a case should be transferred, a court should consider those factors set forth in Neb. Rev. Stat.

---

[3] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[4] *State v. Moyer*, 271 Neb. 776, 715 N.W.2d 565 (2006).

[5] *State v. York*, 273 Neb. 660, 731 N.W.2d 597 (2007).

[6] *State v. McCracken, supra* note 2.

§ 43-276 (Reissue 1998).[7] In order to retain the proceedings, the court does not need to resolve every factor against the juvenile; moreover, there are no weighted factors and no prescribed method by which more or less weight is assigned to each specific factor. It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile.[8]

Section 43-276 requires consideration of the following factors:

> (1) The type of treatment such juvenile would most likely be amenable to; (2) whether there is evidence that the alleged offense included violence or was committed in an aggressive and premeditated manner; (3) the motivation for the commission of the offense; (4) the age of the juvenile and the ages and circumstances of any others involved in the offense; (5) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court, and, if so, whether such offenses were crimes against the person or relating to property, and other previous history of antisocial behavior, if any, including any patterns of physical violence; (6) the sophistication and maturity of the juvenile as determined by consideration of his or her home, school activities, emotional attitude and desire to be treated as an adult, pattern of living, and whether he or she has had previous contact with law enforcement agencies and courts and the nature thereof; (7) whether there are facilities particularly available to the juvenile court for treatment and rehabilitation of the juvenile; (8) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in custody or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (9) whether the victim agrees to participate in mediation; and (10) such other matters as the county attorney deems relevant to his or her decision.

---

[7] See *State v. Doyle*, 237 Neb. 944, 468 N.W.2d 594 (1991).

[8] See *State v. McCracken, supra* note 2.

This section has been revised several times since 1998; the above language was in effect at the time of the district court hearing and decision in this case.

In denying Jones' motion, the district court reasoned that while Jones was not as culpable as his accomplices, he was involved in the planning and commission of the crime charged, and that there was no indication he was coerced or forced into participating. The district court noted Jones' age at the time of the commission of the crime and highlighted the fact that Jones would be subject to juvenile court jurisdiction for approximately 18 months, despite the fact that he stood accused of first degree murder. The court also noted that the victim in this case died after being stabbed 69 times and that it was questionable, given the severity of the crime, whether there were appropriate juvenile services available to Jones. It is clear from the district court's order that all of the factors set forth in § 43-276 were considered by the court.

On appeal, Jones first contends that the district court failed to "adequately consider [his] lack of . . . participation in the planning of the death of the victim."[9] Contrary to this assertion, however, the district court made several references to Jones' involvement in the planning of the crime. For example, the district court noted that "[a]lthough the defendant's part in the homicide may be less culpable than others, reports received into evidence indicate participation in both the planning and carrying out of the offenses charged." The court further noted that "there is no evidence that shows any force or undue influence on the defendant by other participants such that the defendant's actions might be characterized as involuntary. In fact, as previously mentioned, the defendant actually took part in the planning of the offense." Finally, the court found that "[a]lthough other participants had a more active role in the offenses than did the defendant, nevertheless, the defendant took part in both the planning and premeditation as well as the actual commission of the offenses." These various references indicate that the district court considered but rejected Jones' assertion that his

---

[9] Brief for appellant at 10.

more limited involvement in planning the victim's attack supported a transfer to juvenile court.

Jones also argues that his lack of sophistication and maturity, as well as the fact that he read at just a fourth grade level, suggests that transfer to juvenile court was appropriate. But, as with Jones' planning of the crime, it is clear from a review of the district court's order that these points were considered and rejected by the district court. Moreover, Jones fails to address how his lack of maturity and sophistication would outweigh the other findings of the district court which seem to clearly support the denial of the motion to transfer.

Section 43-276 requires the district court to balance its various findings in determining whether transfer to juvenile court is appropriate. Jones was charged with first degree murder for a crime in which the victim was stabbed 69 times. Jones was 17 years of age at the time of sentencing; the juvenile court would have jurisdiction over him until he was 19 years of age, or for approximately 2 years. At that point, the juvenile court would cease to have jurisdiction and Jones would be released. And while Jones may have been less involved with the planning of this crime in comparison to the other perpetrators, the record indicates that he had at least some involvement in planning the crime. Moreover, evidence was presented at the hearing on Jones' motion suggesting that the juvenile system was not equipped to provide services to juveniles accused of first degree murder.

Given a balancing of these factors, we cannot conclude that the district court abused its discretion when it denied Jones' motion to transfer the case to juvenile court. Jones' second assignment of error is without merit.

## CONCLUSION

The record presented to this court is insufficient to allow us to address whether Jones' counsel was ineffective by recommending that Jones plead no contest to first degree murder. As such, we do not further address that argument. In addition, we conclude that the district court did not abuse its discretion in denying Jones' motion to transfer his case to juvenile court. The judgment of the district court is affirmed.

AFFIRMED.