State of Nebraska, appellee, v.
Filiberto Quezada, appellant.
___ N.W.2d ___

Filed June 4, 2013.    No. A-12-581.

1. **Trial: Expert Witnesses.** The right of an indigent defendant to the appointment of an expert witness at State expense generally rests in the discretion of the trial court.

2. **Effectiveness of Counsel: Records: Appeal and Error.** Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. When the issue has not been raised or ruled on at the trial court level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal.

3. **Sentences: Appeal and Error.** A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court.

4. **Drunk Driving: Blood, Breath, and Urine Tests: Proof: Expert Witnesses: Rebuttal Evidence.** A test made in compliance with the statutory scheme, and its corresponding regulations, is sufficient to make a prima facie case on the issue of breath alcohol concentration. That scheme does not require evidence as to any margin of error for the testing device. And the trial court is not required to accept as credible any expert testimony called by the defendant to rebut the State's prima facie case.

5. **Drunk Driving: Blood, Breath, and Urine Tests: Proof.** Neb. Rev. Stat. § 60-6,201 (Reissue 2010) requires that a chemical test be performed in accordance with the procedures approved by the Department of Health and Human Services Regulation and Licensure and by an individual possessing a valid permit issued by that department for such purpose. There are four foundational elements the State must establish for admissibility of a breath test in a prosecution for driving under the influence: (1) that the testing device was working properly at the time of the testing, (2) that the person administering the test was qualified and held a valid permit, (3) that the test was properly conducted under the methods stated by the Department of Health and Human Services Regulation and Licensure, and (4) that all other statutes were satisfied. A breath test that comports with the foregoing listed requirements makes a prima facie case.

6. **Expert Witnesses.** If proposed expert testimony is fundamentally flawed by the expert's own admission, it is not an abuse of discretion for the trial court to refuse to appoint the expert under Neb. Rev. Stat. § 27-706 (Reissue 2008) when there is no showing that this shortcoming in the expert's proposed testimony has been remedied.

7. **Expert Witnesses: Evidence: Affidavits.** A defendant must provide evidence to support a motion to appoint an expert witness, and this evidence may consist of affidavits.

8. **Effectiveness of Counsel: Drunk Driving: Expert Witnesses.** In order to ensure that the right to effective assistance of counsel does not become a hollow right, it is the duty of the State not only to provide an indigent defendant

with an attorney, but also to provide the lawyer with the appropriate tools and services necessary to provide a proper, competent, and complete defense. An indigent defendant being prosecuted for driving while under the influence may, in certain circumstances, be entitled to the appointment of an expert witness at the State's expense.

9. **Expert Witnesses.** An expert need not be supplied every time a request is made by an indigent defendant, nor must the court provide defense counsel with equipment for a "fishing expedition." There must be some showing by defense counsel that the expert is necessary for an adequate defense.

10. \_\_\_\_. There must be some threshold showing of necessity for expert assistance before a trial court may grant a defendant's request therefor, such as why the requested expert testimony was necessary, how such testimony would likely benefit the defense, or why a vigorous cross-examination of the State's witnesses would not achieve the same result.

11. **Effectiveness of Counsel: Witnesses.** When the record shows that the State's witnesses were thoroughly cross-examined consistent with the defense theory, there was meaningful adversarial testing of the prosecution's case.

12. **Constitutional Law: Effectiveness of Counsel: Proof.** The U.S. Supreme Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent or prevented from assisting the accused during a critical stage of the proceeding. Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.

Appeal from the District Court for Douglas County: W. Mark Ashford, Judge. Affirmed.

Sarah M. Mooney, of Mooney Law Office, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

Sievers, Pirtle, and Riedmann, Judges.

Sievers, Judge.

## INTRODUCTION

Filiberto Quezada appeals from his conviction and sentence for third-offense aggravated driving under the influence (DUI), a Class IIIA felony due to his .174 breath alcohol content, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010). He claims that the district court erred in denying his motion to hire an expert witness at public expense to testify to the margin of error inherent in the DataMaster breath testing device

which formed the basis of his conviction. Based on the analysis below, we affirm the conviction.

## FACTUAL BACKGROUND

Roger Ites testified that on August 2, 2011, at approximately 10 p.m., he was driving his motorcycle eastbound on Q Street in Omaha, Nebraska, when he noticed a vehicle backing out onto Q Street approximately half a block in front of him that did not have its lights on. In an effort to avoid the vehicle, Ites moved from the right-hand lane to the left-hand lane. The driver of the vehicle suddenly attempted to make a U-turn to drive west on Q Street. Ites braked heavily but struck the vehicle with the front end of his motorcycle, laying the bike down. Ites called the 911 emergency dispatch service, and both he and the driver of the vehicle waited at the accident scene.

Two Omaha police officers came to the accident scene, and, upon contact with Quezada, the driver of the vehicle, they smelled a strong odor of alcohol on Quezada's breath and noticed his eyes were bloodshot. Based on those observations, one of the officers called for a traffic officer to process the possible DUI.

Officer Nicholas Prescott came to the scene to investigate the possible DUI. Prescott detected that Quezada had a strong odor of alcohol and glassy, bloodshot eyes. Prescott had Quezada perform field sobriety tests; Prescott testified that Quezada showed impairment on the tests. Prescott waited the required 15 minutes before conducting a preliminary breath test, which Quezada failed. Prescott placed Quezada under arrest for suspicion of DUI and transported Quezada to the main police station for an evidentiary breath test. After waiting the requisite 15 minutes, Prescott had a crime laboratory technician administer the DataMaster test, which produced a result of .174 of one gram of alcohol per 210 liters of breath, hereinafter generally referred to as "breath alcohol content." We will generally refer to the breath test result as "BTR."

James Brady, a senior crime laboratory technician with the Omaha Police Department, testified that he has been responsible for maintenance on DataMasters and Intoxilyzers since

1995. Brady testified as to the process that the DataMaster uses to test an individual's breath, and as to his responsibilities as the maintenance officer, such as checking the calibration of the instruments under the Nebraska Administrative Code's title 177, which maintenance he must do every 40 days. Brady testified that the machine used to test Quezada had been timely and properly checked for calibration before its use. Brady testified as to exhibits 8 and 11, copies of the "Chemical Analysis Certification of Alcohol Breath Simulator Solution," which certifications are used per title 177 to verify that the calibration solutions test within tolerance at .08 and .15. Brady also testified as to exhibit 10, a copy of the "Scheduled Maintenance and Calibration Log" for the DataMaster, which showed that he performed the last required 40-day check on July 3, 2011. During the July 3 check, the .08 solution tested at .081, which is off by .001 and within the acceptable margin of error according to title 177. However, we note that in his role as the maintenance officer for the DataMaster, Brady said that he "personally" uses a 5-percent margin of error, meaning anywhere between .076 and .084, which is a "tighter" margin of error than that required for calibration solutions by title 177, which is plus or minus .01. Brady testified that the .15 solution tested at .154, which is also within the acceptable margin of error, both Brady's "personal" margin of error and that allowed by title 177. Brady testified that the results of his July 3 check were valid for 40 days, until August 12. Based upon his training and experience in the crime laboratory and as DataMaster maintenance officer and the above-detailed test results, Brady concluded and testified that the DataMaster, when used to test Quezada's breath, was in proper working and operational condition.

A technician employed with the Omaha Police Department's crime laboratory testified that on August 2, 2011, she conducted a breath test for Prescott on Quezada. Prior to conducting the test, she determined that the maintenance and calibration checks had been performed on the DataMaster and that it was in proper working order. She testified that she followed all of the required procedures from title 177 and that Quezada's breath alcohol content was .174.

## PROCEDURAL BACKGROUND

The information was filed against Quezada on August 8, 2011. On February 10, 2012, Quezada filed a motion for appointment of an expert witness. On March 27, the trial court entered an order denying Quezada's motion to appoint an expert witness. The case was tried to a jury on March 26 and 27. On March 27, the jury returned a verdict finding Quezada guilty of the charge of DUI, and the trial court accepted the jury's verdict. On June 11, Quezada was sentenced to 2 to 2 years' imprisonment, his license was revoked for 15 years, and he was ordered to pay a fine of $10,000. Quezada filed a notice of appeal to this court on June 28.

## ASSIGNMENTS OF ERROR

Quezada assigns the following errors: (1) The trial court abused its discretion when it refused to appoint an expert witness, (2) Quezada was denied effective assistance of counsel, and (3) the trial court abused its discretion when it imposed an excessive sentence.

## STANDARD OF REVIEW

[1] The right of an indigent defendant to the appointment of an expert witness at State expense generally rests in the discretion of the trial court. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998).

[2] Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. *State v. Jones*, 274 Neb. 271, 739 N.W.2d 193 (2007). When the issue has not been raised or ruled on at the trial court level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal. *Id.*

[3] A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Losinger*, 268 Neb. 660, 686 N.W.2d 582 (2004).

## ANALYSIS

*Denial of Appointment of Expert Witness*
*Regarding Accuracy of DataMaster.*

Quezada argues that the trial court erred in failing to appoint an expert witness who could testify that due to the unreliability of the DataMaster machine and its margin of error, Quezada's breath alcohol content may not have been at .15 or over when Quezada was driving the vehicle. Because Quezada was allegedly indigent and could not afford to hire an expert witness, counsel filed a motion to appoint an expert witness pursuant to Neb. Rev. Stat. § 27-706 (Reissue 2008), which allows the court to appoint an expert witness who operates under the written instructions of the court and may testify. This statute specifically provides that the court may inform the jury that the expert is court appointed, but when this statute is used, the parties may still call their own expert witnesses.

In his motion filed on February 10, 2012, Quezada stated that he was "currently represented by retained counsel but [was] financially unable to afford necessary supporting services." In his affidavit in support of the motion, Quezada stated that he paid his attorney by creating a concrete patio at his counsel's home. In support of the motion for appointment of the expert, counsel for Quezada argued that the situation regarding his being retained counsel by way of a "barter arrangement" was simply analogous to a pro bono attorney asking the court to pay deposition fees or other litigation expenses for an indigent defendant. At this hearing on the motion, counsel for the State argued that the State was not bringing in an expert witness, such as a toxicologist, but, rather, that Brady was simply a DataMaster maintenance officer. When the trial court judge asked the State whether it was bringing in someone to say what Quezada would have tested at the time of his driving, the State responded in the negative, saying: "There's no expert or extra evidence that's being brought by the State in this case. The test we're talking about, .174, is well within the margin for error in Title 177 and in the maintenance records that you'll see." The following exchange took place:

> THE COURT: . . . I'm assuming one of the arguments of the defense is that's what he tested when he was tested, but the question to the jury would be what would he have tested when he was driving. And you're not bringing in the expert to establish that information?
>
> [Counsel for the State]: I am not, Your Honor.

The court's order simply states that "[Quezada's] motion to appoint an expert witness is hereby denied," but does not provide any rationale.

Quezada's defense which he wanted to advance at trial was that the BTR of .174 alleged by the State was subject to a margin of error due to the unreliability of the DataMaster and that therefore the State could not prove that Quezada's breath alcohol content was at or above .15 when he was operating the vehicle, preventing him from being convicted of felony aggravated DUI. Quezada wanted Dr. John Vasiliades, a forensic toxicologist, to testify that the DataMaster has a margin of error of ".03" and that absorption and excretion rates of alcohol may have affected Quezada's BTR. We note that Vasiliades has provided similar testimony in several other DUI cases. See, *State v. Kuhl*, 276 Neb. 497, 755 N.W.2d 389 (2008) (Vasiliades testified that his opinion within reasonable degree of scientific certainty was that margin of error for DataMaster was plus or minus .03 of a gram); *State v. Baue*, 258 Neb. 968, 607 N.W.2d 191 (2000) (Vasiliades testified that Intoxilyzer Model 4011AS has inherent analytical error of plus or minus .03 of a gram, so that reading of .11 could be as low as .08 or as high as .14). We assume Vasiliades' testimony, if allowed in this case, would have been similar, and we note that defense counsel represented such in his affidavit in support of the motion, although counsel did not specify that the .03 was "grams" but we assume it would have been .03 of a gram, given Vasiliades' testimony in the other reported cases.

In the motion for appointment of an expert witness, counsel for Quezada stated that Quezada was represented by retained counsel but was financially unable to afford necessary supporting services. Quezada's financial affidavit shows that he would be considered indigent, despite having "bartered" for his

retained counsel's services, and we operate on the premise that at the time of the motion under discussion, Quezada would be considered indigent.

[4,5] Thus, the issue is simply whether the trial court abused its discretion in denying the § 27-706 motion to have Vasiliades as a court-appointed expert under that statute, given Quezada's indigent status. We turn to *State v. Kuhl*, 276 Neb. at 510, 755 N.W.2d at 399, where the court said:

> It is a longstanding principle that a test made in compliance with the statutory scheme, and its corresponding regulations, is sufficient to make a prima facie case on the issue of blood alcohol concentration. That scheme does not require evidence as to any margin of error for the testing device. And the trial court is not required to accept as credible any expert testimony called by the defendant to rebut the State's prima facie case.
>
> Currently, § 60-6,201 requires that a chemical test be performed in accordance with the procedures approved by the Department of Health and Human Services Regulation and Licensure and by an individual possessing a valid permit issued by that department for such purpose. We have explained that there are four foundational elements the State must establish for admissibility of a breath test in a DUI prosecution: (1) that the testing device was working properly at the time of the testing, (2) that the person administering the test was qualified and held a valid permit, (3) that the test was properly conducted under the methods stated by the Department of Health and Human Services Regulation and Licensure, and (4) that all other statutes were satisfied.

The *Kuhl* court makes it clear that a breath test which comports with the foregoing listed requirements makes a prima facie case. Thus, a prima facie case of DUI over .15 was made against Quezada because the requirements for such test as set forth in *Kuhl* were satisfied by the State's evidence, and no claim is advanced here by Quezada that the *Kuhl* requirements for a prima facie case were not satisfied. And, we note that there was no objection to exhibit 14, the result of Quezada's breath test.

Quezada wanted to rebut the prima facie case by having the court appoint an expert, Vasiliades, to testify that the DataMaster's reading of a suspect's breath has a .03-gram margin of error—which on the low side would put Quezada under .15 at .144 if believed by the jury. But, *State v. Kuhl*, 276 Neb. 497, 755 N.W.2d 389 (2008), also makes it clear that the fact finder is not required to accept as credible any expert testimony called by the defendant to rebut the State's prima facie case.

[6] However, the court in *Kuhl* points out a fundamental flaw that existed in Vasiliades' testimony, which was his own admission that "he knew of no studies that specifically related to the DataMaster used to test [the defendant] and that such a particularized study would be necessary to accurately access the machine's margin of error." 276 Neb. at 510-11, 755 N.W.2d at 399-400. If proposed expert testimony is fundamentally flawed by the expert's own admission, it is not an abuse of discretion for the trial court to refuse to appoint the expert under § 27-706 when there is no showing that this shortcoming in the expert's proposed testimony has been remedied. The affidavit made by counsel in the case before us about Vasiliades' proposed testimony did not make any showing that this fundamental shortcoming in Vasiliades' opinion of the margin of error that he thinks is present in the DataMaster machine's reading of the suspect's breath had been remedied. Without any showing that this shortcoming had been remedied, we cannot say that the trial court abused its discretion in refusing to appoint Vasiliades under § 27-706.

[7-10] In *State v. Turco*, 6 Neb. App. 725, 576 N.W.2d 847 (1998), we cited to *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993), *postconviction relief granted*, 249 Neb. 381, 543 N.W.2d 725 (1996), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). In *White*, the Nebraska Supreme Court held that a defendant must provide evidence to support the motion to appoint an expert witness and that this evidence may consist of affidavits. In *Turco*, we concluded that the trial court's denial of the defendant's motion to hire an expert witness to testify regarding the accuracy of breath testing equipment used and the result obtained

was not an abuse of discretion. In reaching this conclusion, we stated:

> In order to ensure that the right to effective assistance of counsel does not become a hollow right, it is the duty of the State not only to provide an indigent defendant with an attorney, but also to provide the lawyer with the appropriate tools and services necessary to provide a proper, competent, and complete defense. . . . Thus, it appears that an indigent defendant being prosecuted for [DUI] may, in certain circumstances, be entitled to the appointment of an expert witness at the State's expense.
>
> However, an expert need not be supplied every time a request is made by an indigent defendant, nor must the court provide defense counsel with equipment for a "fishing expedition." . . . There must be some showing by defense counsel that the expert is necessary for an adequate defense. [In] *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993) . . . , the Nebraska Supreme Court held that although there may be circumstances under which a district court's denial of a defendant's request for funds to hire an expert would be an abuse of discretion, under the circumstances of that case, where no evidence to support the motion was offered, the district court did not abuse its discretion.

6 Neb. App. at 730-31, 576 N.W.2d at 852 (citations omitted). Thus, we concluded:

> Stated simply, defense counsel gave no indication as to why the requested expert testimony was necessary or how such testimony would likely benefit the defense, or as to why a vigorous cross-examination of the State's witnesses would not achieve the same result. There must be some threshold showing of necessity for expert assistance before a trial court may grant a defendant's request therefor.
>
> In sum, while we conclude that there may be circumstances under which the denial of funds for an expert witness would be an abuse of discretion, we conclude that under the circumstances of this case, where no evidence to support the motion was offered, the county court did

> not abuse its discretion in denying the motion to hire an
> expert witness, and the district court's reversal thereof
> was error.

*Id*. at 732, 576 N.W.2d at 852-53.

In the case at hand, while defense counsel did provide an affidavit of Vasiliades' proposed testimony, that affidavit did not reveal that the shortcoming in his testimony as pointed out in *State v. Kuhl*, 276 Neb. 497, 755 N.W.2d 389 (2008), had been addressed or cured. Thus, there could not be any benefit to Quezada, given that the testimony, at least insofar as represented by Quezada's counsel's affidavit, would be plainly inadmissible, given the witness' obvious lack of foundation to opine on a margin of error inherent in the reading of Quezada's breath by the DataMaster, despite the other undisputed evidence showing its proper calibration and functioning of the machine under title 177. Therefore, this assignment of error is without merit.

*Ineffective Assistance of Counsel.*

Quezada also argues that trial counsel was ineffective for a number of reasons: (1) Counsel did not request that voir dire examination be placed on the record, (2) counsel did not object during the 2-day jury trial, and (3) counsel did not move for a mistrial or for a new trial based on the trial court's denial of his motion for appointment of an expert witness after the State presented Brady's testimony concerning the validity of the DataMaster machine.

Quezada first argues that trial counsel neglected to request that voir dire examination be on the record. Because there is no record of what occurred, any possible appealable issues or prejudicial statements were not preserved. The record is insufficient for us to determine whether Quezada's counsel's performance during voir dire was deficient or whether any such deficient performance prejudiced his defense.

[11,12] Second, Quezada argues that trial counsel neglected to object during the trial. In *State v. Davlin*, 265 Neb. 386, 658 N.W.2d 1 (2003), the defendant argued that he was denied effective assistance of counsel by his trial counsel's failure to subject the prosecution's case to meaningful adversarial

testing. When the record shows that the State's witnesses were thoroughly cross-examined consistent with the defense theory, there was meaningful adversarial testing of the prosecution's case. In *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), the U.S. Supreme Court explained that where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." The Court also noted:

> The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding. . . .
>
> Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.

*United States v. Cronic*, 466 U.S. at 659 n.25, 26.

This holding applies to the case at hand. Quezada argues that he was denied effective assistance of counsel in counsel's failure to make any objections during the trial. However, the record shows that each of the State's witnesses was thoroughly cross-examined consistent with the defense theory regarding the margin of error for the DataMaster test and that Quezada's actual breath alcohol content was unknown at the moment he was driving immediately before the accident. Therefore, there was meaningful testing of the prosecution's case. Quezada identifies numerous instances in which an objection may have been appropriate during trial, but he is unable to show actual prejudice where the result of the DataMaster test was .174, remembering that no objection was made to the admission of the BTR, exhibit 14. Even if it may have been proper for Quezada's counsel to object in specific instances, which we do not address, Quezada must show that counsel's deficient performance resulted in prejudice and how specific errors of counsel undermined the reliability of the finding of guilt. Quezada has failed to meet this burden.

Third, Quezada argues that trial counsel neglected to move for a mistrial or for a new trial based on the trial court's denial of his motion for appointment of an expert witness after the State presented Brady's testimony. Quezada claims that the State specifically stated at the hearing on the motion for appointment of an expert witness that it would not be presenting expert witness testimony. However, the agreement was that the State would not bring in an expert to opine as to what Quezada's breath alcohol content would have been *at the time of the accident*. The court allowed Brady to testify as to the maintenance of the DataMaster machine and the way in which the DataMaster machine operates according to title 177, and such testimony was not a violation of the representations made by the State as to what sort of expert it would or would not call to testify.

Quezada argues that trial counsel should have objected to Brady's testimony and moved for a mistrial and that counsel should have renewed his motion to appoint an expert when the State put on Brady's testimony. Quezada claims that trial counsel's failure to object and exclude the improper testimony, to object and move for a mistrial, or to object and renew the motion for appointment of an expert left Quezada with no expert testimony to counter the DataMaster evidence and the expert opinion given by the State's witness. However, it is clear that Vasiliades' testimony did not go to the accuracy of Brady's calibration testing, but, rather, to a margin of error inherent in the DataMaster's test result of a suspect's breath. Thus, nothing testified to by Brady would have bolstered Quezada's argument to have Vasiliades testify or given the trial judge cause to grant a renewed motion that had been earlier denied. In this regard, it must be remembered that Brady did not present evidence as to the margin of error of the DataMaster machine when it produces a reading of the alcohol content of a suspect's breath. Rather, Brady testified only as to the margin of error in the calibration solutions and the margin of error for the internal standard, which is an entirely different matter. Further, Brady's testimony was not improper, because it was not expert testimony as to Quezada's breath alcohol content at the time he was driving and was also not

expert testimony from an undisclosed expert. Thus, Brady's testimony was permissible and did not include any evidence about whether the BTR reading from a DataMaster has an inherent margin of error when testing an unknown sample such as Quezada's breath. Rather, Brady's testimony addressed only the permissible margin of error when the DataMaster is checked for proper calibration by the use of known solutions. Therefore, it would not have been proper to exclude his testimony. And, as we found above, the court did not abuse its discretion in overruling the motion prior to trial, because there was no showing that Vasiliades' proposed testimony was no longer subject to the shortcoming pointed out in *State v. Kuhl*, 276 Neb. 497, 755 N.W.2d 389 (2008). Thus, on this record, we cannot find any deficient performance of trial counsel that was prejudicial to Quezada.

*Excessive Sentence.*

Quezada's last argument is that the trial court's sentence of 2 to 2 years' imprisonment, a 15-year license revocation, and a $10,000 fine was excessive. Quezada argues that he had a very minimal criminal record, he has three children, and he has enrolled in outpatient treatment and had openly discussed his alcoholism with the probation officer. However, as the trial court judge noted at the sentencing hearing, this was Quezada's fifth DUI and Quezada is a "dangerous guy" because he continued to drive drunk without insurance. We cannot say that Quezada's sentence, for which he will be eligible for parole in 294 days from the sentencing date, is excessive and an abuse of the trial court's discretion. Thus, the third assignment of error is without merit.

## CONCLUSION

For the reasons discussed, we conclude that the district court did not abuse its discretion in denying Quezada's motion to appoint an expert witness at public expense or in sentencing Quezada. We also find that Quezada's ineffective assistance of counsel argument is without merit. We affirm the conviction and sentence.

Affirmed.