IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. WIZINSKY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
JOHN M. WIZINSKY, APPELLANT.

Filed December 31, 2013.    No. A-13-362.

Appeal from the District Court for Hall County: WILLIAM T. WRIGHT, Judge. Affirmed.

Michael P. Kneale, of Bradley, Elsbernd, Andersen, Kneale & Mues Jankovitz, P.C., for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

MOORE, PIRTLE, and BISHOP, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

John M. Wizinsky pled no contest to one count of felony theft by unlawful taking and one count of felony criminal mischief. On appeal, he contends that his counsel was ineffective in several respects, that the trial court erred in accepting his plea, and that the trial court erred in overruling his motion for discharge. Based on the reasons that follow, we affirm.

## II. BACKGROUND

Wizinsky was originally charged with theft by unlawful taking, criminal mischief, and possession of burglar tools. Pursuant to a plea agreement, Wizinsky entered no contest pleas to theft by unlawful taking and criminal mischief. In exchange for the plea, the State agreed to dismiss the charge of possession of burglar tools and a burglary charge in a separate and unrelated case. The State also agreed to recommend a sentence of 4 to 6 years' imprisonment to run concurrent with the sentence Wizinsky was then serving, to waive the presentence investigation, and to sentence Wizinsky that same day the plea was entered. There was also an

agreement to restitution in the amount of $1,360, to be joint and several with any other codefendants convicted in the matter.

The State set forth a factual basis for the plea as follows: Ed Stoltenberg of Cairo, Hall County, Nebraska, has irrigation pivots with copper wire located on his property. He has an alarm system set up to notify him on his telephone if any of the wires are cut. On June 15, 2012, at approximately 4 a.m., Stoltenberg received an alarm. He drove to the place where the pivots are located and saw a vehicle sitting on the side of the road; the headlights were off but the dome light was on. Suspecting the occupants were stealing the copper wire, Stoltenberg called the 911 emergency dispatch service.

The dome light in the vehicle was turned off, and the vehicle started moving down the road. While Stoltenberg was still on the telephone calling 911, he followed the vehicle described as a black pickup truck. Deputy sheriffs pulled over the vehicle, and Wizinsky was identified as the passenger. The sheriffs noticed there was approximately 200 to 240 feet of cut copper wire in the back of the vehicle. The copper wire was identified by Stoltenberg as belonging to him by "painting 'Ed' with white-out on the copper wire."

Stoltenberg and the sheriff inspected the pivot. The copper wire had been cut off the top of the pivot and the other half of the copper wire was missing. The damage to the pivot was over $1,500. Stoltenberg was able to salvage approximately $240, which left a loss to him of $1,360.

After listening to the factual basis, the court accepted Wizinsky's pleas and found him guilty of the two charges. The court then sentenced him to 4 to 6 years' imprisonment for theft by unlawful taking and 20 to 60 months' imprisonment for criminal mischief. The sentences were ordered to be served concurrently to each other and concurrently to the sentence he was then serving. Wizinsky was also ordered to pay restitution in the amount of $1,360.

Two days after Wizinsky pled no contest and was sentenced, he filed a pro se motion for absolute discharge, asserting that his statutory speedy trial rights had been violated.

A hearing was held on the motion several days later. Wizinsky's counsel informed the court that he had visited with Wizinsky a few days before he entered his plea and that Wizinsky told his counsel he had filed the motion for discharge. Wizinsky's counsel told the court that he and Wizinsky discussed the matter, that Wizinsky understood their conversation, that Wizinsky entered his plea with the intention of concluding his cases, and that Wizinsky wanted the court to disregard his motion for absolute discharge.

The trial court overruled Wizinsky's motion for absolute discharge, finding that he waived his right to a speedy trial when he pled no contest to the charges.

## III. ASSIGNMENTS OF ERROR

Wizinsky assigns that his trial counsel was ineffective in (1) motioning for continuances despite Wizinsky's clear request that hearings not be continued, (2) failing to properly investigate the State's evidence to be used at trial, and (3) allowing him to plead when he was not competent to enter a plea. Wizinsky also assigns that the trial court erred in (1) accepting his no contest plea after inquiring about the bandage on his head and being informed of his recent surgery and (2) overruling his motion for discharge.

- 2 -

## IV. STANDARD OF REVIEW

The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. *State v. Enriquez-Beltran*, 9 Neb. App. 459, 616 N.W.2d 14 (2000). Further, the only exceptions are for the defenses of insufficiency of the indictment, information, or complaint; ineffective assistance of counsel; and lack of jurisdiction. *Id.*

## V. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Jones*, 274 Neb. 271, 739 N.W.2d 193 (2007). The two prongs of this test, deficient performance and prejudice, may be addressed in either order. *State v. Dunkin*, 283 Neb. 30, 807 N.W.2d 744 (2012).

A trial counsel's performance was deficient if it did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012). In determining whether a trial counsel's performance was deficient, courts give his or her acts a strong presumption of reasonableness. *Id.*

Within the plea context, in order to satisfy the prejudice requirement to establish an ineffective assistance of counsel claim, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial. *State v. Dunkin, supra*.

Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. When the issue has not been raised or ruled on at the trial court level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal. *State v. Jones, supra*.

### (a) Trial Counsel's Motion
### for Continuance

Wizinsky first assigns that he was denied effective assistance of counsel because his counsel moved for continuances of the plea hearing and jury trial against his express request to not continue any hearing for any reason.

The record shows that Wizinsky's counsel asked for a continuance on three occasions. He first sought a continuance in September 2012 because Wizinsky had just been sentenced to a lengthy prison sentence in another case. Counsel told the court that he believed the change in Wizinsky's circumstances created an opportunity for the State and the defense to reevaluate any potential plea offers. Wizinsky was present when his counsel asked for the continuance, and there is no indication on the record that he opposed the continuance.

Wizinsky's counsel sought a second continuance in November 2012 because Wizinsky was in prison at the time. Counsel told the court that the State had made a plea agreement offer

the day before and that he had not been able to convey that offer to Wizinsky because he was in prison.

In January 2013, Wizinsky's counsel made a third motion to continue. At the time, it appeared that there would be a trial on the charges at issue in the present case and on an unrelated burglary charge. Wizinsky's counsel asked for a continuance in regard to the unrelated burglary charge because he wanted to avoid both cases being tried with the same jury panel. The unrelated burglary charge was the charge that was ultimately dismissed pursuant to the plea agreement.

When reviewing claims of ineffective assistance, we will not second-guess a trial counsel's reasonable strategic decisions. *State v. Edwards, supra*. And we must assess the trial counsel's performance from the counsel's perspective when the counsel provided the assistance. *Id.*

The continuances sought by Wizinsky's counsel were reasonable strategic decisions, which we do not second-guess. Wizinsky has failed to show that his trial counsel's performance in seeking continuances was deficient. Therefore, he has failed to show that counsel was ineffective in this regard.

(b) Trial Counsel's Failure to
Investigate State's Evidence

Wizinsky next assigns that his trial counsel was ineffective in failing to investigate the State's evidence to be used at trial. Wizinsky asserts that his trial counsel was aware that the copper wire at issue had been returned to Stoltenberg and that the chain of control had been broken. Wizinsky further asserts that he was set up by Stoltenberg, that Stoltenberg had made false allegations of theft against other individuals, and that his trial counsel failed to investigate this issue. Wizinsky contends that 5 weeks after the theft, he gave trial counsel photographs of the roads and ditches near Stoltenberg's home and business. The photographs showed scrap metal, including unused copper wire, in the ditches which Wizinsky surmised were left by Stoltenberg to entice individuals to pick up the wire, resulting in Stoltenberg's contacting law enforcement and alleging theft. Wizinsky also claims that the value of the stolen property was less than the value necessary to prove theft by unlawful taking as a Class III felony, which is the charge Wizinsky pled to.

None of the State's evidence or any of the discussions between counsel and Wizinsky regarding the evidence or their theory of defense is on the record before us. Therefore, the record is insufficient to adequately review this assignment of error on direct appeal.

(c) Competency to Plead

Wizinsky next assigns that his trial counsel was ineffective for allowing him to plead when he was not competent to enter a plea. Wizinsky claims that at the time of his no contest plea, he was recovering from surgery and was under the influence of pain medication. He contends that because of the medication, he did not fully comprehend what he was doing and his plea was not knowingly, intentionally, and voluntarily made.

A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own

condition in reference to such proceedings, and to make a rational defense. *State v. Dunkin*, 283 Neb. 30, 807 N.W.2d 744 (2012). The test of mental capacity to plead is the same as that required to stand trial. *Id.*

The record demonstrates that Wizinsky had the capacity to understand the proceedings and assist in his defense. Before accepting Wizinsky's no contest plea, the following colloquy took place between the court and Wizinsky:

THE COURT: . . . Wizinsky, are you presently under the influence of any alcohol, drug or chemical of any kind that might affect your ability to understand or participate in these proceedings?

[Wizinsky]: No, sir.

THE COURT: Are you presently suffering from any mental or emotional illness or condition that might affect your ability to understand or to participate in these proceedings?

[Wizinsky]: Yes.

THE COURT: All right. You have to listen to me one more time. Are you presently suffering from any mental or emotional illness or condition that might affect your ability to understand or to participate in these proceedings?

[Wizinsky]: No.

THE COURT: The Court notes that you are wearing a bandage on your head.

[Wizinsky]: I had an operation.

THE COURT: All right. And you're completely -- at least you are recovered sufficiently from that operation to make decisions for yourself today, is that correct?

[Wizinsky]: Yes, sir.

THE COURT: Do you know of any reason why you could not freely, voluntarily, knowingly and intelligently make decisions for yourself today?

[Wizinsky]: No.

THE COURT: Do you know of any reason why you could not freely, voluntarily, knowingly and intelligently plead guilty or no contest to Counts I and II of the information in this case?

[Wizinsky]: No.

The record reflects that Wizinsky was competent to enter his plea and that therefore, his counsel was not ineffective for allowing him to plead.

### 2. COURT'S ACCEPTANCE OF PLEA

In a related argument, Wizinsky assigns that the trial court erred when it accepted his no contest plea after inquiring about the bandage on Wizinsky's head and being informed of his recent surgery. Wizinsky argues that the court should have adjourned the proceedings and obtained a medical opinion on Wizinsky's competency.

A court is not required to make a competency determination in every case in which a defendant seeks to plead guilty. A competency determination is necessary only when a court has reason to doubt the defendant's competence. See *State v. Thoi*, 279 Neb. 964, 783 N.W.2d 416 (2010).

There was no basis for the court to question Wizinsky's competency on the date of the plea. As set forth above, during the plea hearing, Wizinsky represented to the court that he was not suffering from any condition that would affect his ability to understand or participate in the proceedings, that he had sufficiently recovered from surgery to make decisions for himself, and that he was not under the influence of any drugs that would affect his ability to understand the proceedings. Further, throughout the plea hearing, Wizinsky's responses to questions were appropriate and clear.

Based on the record, Wizinsky understood the nature and object of the proceedings against him, was able to comprehend his own condition in reference to such proceedings, and was able to make a rational defense. See *State v. Dunkin*, 283 Neb. 30, 807 N.W.2d 744 (2012). There is nothing in the record that would cause the trial court to doubt Wizinsky's competency to plead. This assignment is without merit.

### 3. MOTION FOR DISCHARGE

Finally, Wizinsky assigns that the trial court erred in overruling his motion for discharge that was based on speedy trial grounds. We disagree. By entering his no contest pleas, Wizinsky waived his statutory and constitutional right to a speedy trial. The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. *State v. Enriquez-Beltran*, 9 Neb. App. 459, 616 N.W.2d 14 (2000). Further, Neb. Rev. Stat. § 29-1209 (Reissue 2008) specifically provides that "[f]ailure of the defendant to move for discharge prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to speedy trial."

Wizinsky's pro se motion for discharge was filed on March 27, 2013, 2 days after he pled no contest and was sentenced. Therefore, based on his plea and his motion being filed after his plea, he has waived his right to a speedy trial.

Despite the motion for discharge being filed after Wizinsky pled no contest, the court held a hearing on the motion and acknowledged that it had been brought to the court's attention that Wizinsky had prepared the motion for absolute discharge prior to his pleas. Wizinsky's counsel informed the court that he visited with Wizinsky a few days before he entered his pleas and that Wizinsky told counsel he had filed the motion for absolute discharge. Counsel told the court that he and Wizinsky discussed the matter, that Wizinsky understood their conversation, that Wizinsky entered his plea with the intention of concluding his cases, and that Wizinsky wanted the court to disregard his motion for absolute discharge.

The trial court did not err in overruling Wizinsky's motion for absolute discharge based on speedy trial grounds.

### VI. CONCLUSION

For the reasons stated above, Wizinsky's convictions and sentences for theft by unlawful taking and criminal mischief are affirmed.

AFFIRMED.