Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/13/2016 09:06 AM CDT

State of Nebraska, appellee, v.
Mohamed Abdulkadir, appellant.
___ N.W.2d ___

Filed May 13, 2016.    No. S-15-951.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Constitutional Law: Judgments: Proof.** An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution, causing the judgment against the defendant to be void or voidable.

3. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.

4. **Postconviction: Effectiveness of Counsel: Appeal and Error.** When a defendant was represented both at trial and on direct appeal by the same lawyers, generally speaking, the defendant's first opportunity to assert ineffective assistance of trial counsel is in a motion for postconviction relief.

5. **Self-Defense.** Self-defense is a legal conclusion.

6. ____. To successfully claim one was acting in self-defense, the force used in defense must be immediately necessary and must be justified under the circumstances.

7. ____. A defendant's use of deadly force in self-defense is justified if a reasonable ground existed under the circumstances for the defendant's belief that he or she was threatened with death or serious bodily

harm, even if the defendant was actually mistaken about the extent of the danger.

8. ____. Once the basis for an accused's reasonable belief that he or she is in danger of serious bodily harm has been dispelled, the accused's continued use of deadly force is not justified by self-defense.

Appeal from the District Court for Lancaster County: STEVEN D. BURNS, Judge. Affirmed.

Stuart J. Dornan, of Dornan, Lustgarten & Troia, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, CASSEL, STACY, and KELCH, JJ.

HEAVICAN, C.J.

## INTRODUCTION

Mohamed Abdulkadir appeals from the district court's order denying his postconviction motion to vacate and set aside his convictions without an evidentiary hearing. Abdulkadir alleged that his convictions for the second degree murder of Michael Grandon and for use of a deadly weapon to commit a felony should be vacated because his trial counsel failed to call two witnesses Abdulkadir claimed would have testified in his favor. We affirm.

## BACKGROUND

This is the second time Abdulkadir has appealed to this court. In 2013, we affirmed his convictions on direct appeal.[1] Abdulkadir then filed a postconviction motion to vacate and set aside his convictions in the district court because his trial counsel (who also served as counsel on direct appeal) did not call two potential witnesses: Eltio Plater and a corrections officer named "Vidal."

---

[1] *State v. Abdulkadir*, 286 Neb. 417, 837 N.W.2d 510 (2013).

In June 2011, Abdulkadir was an inmate at the Nebraska State Penitentiary. During the afternoon of June 30, Abdulkadir reported to a caseworker, Cody Eastman, that some items from his cell were missing. Eastman told Abdulkadir to fill out a report to assist in the investigation. Instead, Abdulkadir began asking fellow inmates if they knew anything about the theft. Abdulkadir approached Grandon in the prison gymnasium to discuss the stolen items, but Grandon apparently denied any involvement.

According to Abdulkadir's testimony and corroborating testimony by another inmate, Danny Robinson, later that afternoon, Grandon punched Abdulkadir without warning and a struggle ensued. Abdulkadir and Robinson testified that Grandon then took an object, later discovered to be a knife, into his hand and that Abdulkadir wrestled the knife from Grandon. Witnesses saw Abdulkadir stab Grandon multiple times. After the altercation, Grandon died from his injuries.

Henry McFarland was an officer on duty in Abdulkadir's housing unit on the day Grandon died. McFarland testified at trial that while working in the control center, four inmates, including Plater and Robinson, stood shoulder-to-shoulder, blocking his view of the unit. McFarland told the inmates to move and then heard the struggle between Grandon and Abdulkadir from the direction the inmates had been obstructing. He witnessed Grandon falling to the floor. Abdulkadir then stood over Grandon, making stabbing motions while Grandon rolled around in a fetal position.

Three of the four inmates who had allegedly blocked McFarland's view testified at trial that they were merely cutting each other's hair. They claimed not to be intentionally obstructing the control center window. Plater was not called to testify.

McFarland called for help, and Eastman was the first to respond. When Eastman entered the area, he witnessed Grandon already on the floor in a fetal position and Abdulkadir standing over Grandon, stabbing him twice. Eastman then

entered the area and told Abdulkadir to drop the knife; Abdulkadir complied.

McFarland testified that he saw Abdulkadir stab Grandon between 10 to 15 times while Grandon was on the floor. McFarland also said that he heard Abdulkadir yelling, "'You think you can steal from me?'"[2] Another officer who was also in the unit at the time testified at trial that Abdulkadir stabbed Grandon only three or four times after Grandon fell. Abdulkadir testified that during the struggle, he became hysterical and apparently could not remember what happened after he began stabbing Grandon. None of Abdulkadir's trial witnesses claimed to have seen the entire incident.

Grandon suffered a total of 25 stab wounds. He was still alive briefly after Abdulkadir was escorted away. But Grandon's heart stopped beating before he arrived at the hospital.

After the stabbing, Abdulkadir was taken to a segregation unit. There, an officer overheard Abdulkadir responding to inmates' questions about why he was in segregation. According to that officer's testimony, Abdulkadir told them that "'somebody was stealing his shit and he couldn't let that happen and that he'd do it again.'"[3]

A jury convicted Abdulkadir, and the district court sentenced him to a term of life-to-life imprisonment for second degree murder and 15 to 25 years' imprisonment for use of a deadly weapon. We affirmed the convictions on direct appeal. Abdulkadir then filed the motion for postconviction relief at issue here on the ground of ineffective assistance of counsel. Abdulkadir alleged, in part:

    1. That defense counsel failed to produce, as requested by [Abdulkadir], two witnesses who would have provided testimony that would have been favorable to [Abdulkadir];

    2. That one of the witnesses, . . . Plater, a recent parolee who had witnessed the altercation that led to the

_____
[2] *Id.* at 420, 837 N.W.2d at 514.

[3] *Id.* at 420, 837 N.W.2d at 515.

charges against [Abdulkadir], would have testified that he observed a fist fight between [Abdulkadir] and another inmate and he observed [Abdulkadir] take from the other party in the fist fight a knife or some other object which he saw [Abdulkadir] use while defending himself[.]

The State moved to deny an evidentiary hearing on Abdulkadir's motion.

At a June 2, 2015, hearing, the district court granted Abdulkadir additional time to locate his potential witnesses, Plater and Vidal. On September 4, there was a second hearing on the State's motion to deny an evidentiary hearing. Abdulkadir stated that Vidal's "affidavit would not add anything to the petition." Abdulkadir also stated that Plater was proving difficult to track down because he was evading a warrant for child support. Although he could not say with certainty what Plater may have testified to at trial if called, Abdulkadir claimed that Plater's testimony "would have corroborated . . . Abdulkadir's testimony and would have lended [sic] credence to his argument that he was acting in self-defense."

The district court granted the State's motion to deny an evidentiary hearing. The district court discounted the assertion that Plater would testify that Abdulkadir was "defending himself," because self-defense is a legal conclusion, not a factual allegation. Further, it reasoned that Abdulkadir had failed to allege facts warranting postconviction relief because Abdulkadir suffered no prejudice by Plater's absence at trial.

## ASSIGNMENTS OF ERROR

Abdulkadir assigns that the district court erred by (1) denying an evidentiary hearing and (2) denying postconviction relief.

## STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her

constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[4]

## ANALYSIS

In his first assignment of error, Abdulkadir argues that the district court erred by granting the State's motion to deny an evidentiary hearing. We find no error, because Abdulkadir's motion did not allege any facts showing his defense was prejudiced by the absence of Plater and Vidal at his trial.

[2] An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution, causing the judgment against the defendant to be void or voidable.[5] However, if the motion alleges only conclusions of fact or law, or the records and files in the case affirmatively show that the movant is entitled to no relief, no evidentiary hearing is required.[6]

[3,4] In this case, Abdulkadir claims that he received ineffective assistance of counsel, in violation of his constitutional rights. To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.[7] When a defendant was represented both at trial and on direct appeal by the same lawyers, generally speaking, the defendant's first opportunity to assert ineffective assistance of trial counsel is in a motion for postconviction relief.[8] Here, Abdulkadir was represented by the same counsel at trial and upon direct appeal, so his ineffective assistance of counsel claim has not been waived.

---

[4] *State v. Phelps*, 286 Neb. 89, 834 N.W.2d 786 (2013).

[5] *State v. Cook*, 290 Neb. 381, 860 N.W.2d 408 (2015).

[6] *State v. Ware*, 292 Neb. 24, 870 N.W.2d 637 (2015).

[7] *State v. Jones*, 274 Neb. 271, 739 N.W.2d 193 (2007).

[8] *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004).

Abdulkadir's motion alleged that his trial counsel failed to produce Plater and Vidal—which we presume Abdulkadir claims was deficient performance. But nothing in Abdulkadir's motion specifically alleges any prejudice to his defense. Instead, Abdulkadir states that Plater's and Vidal's testimony "would have been favorable" to him. We question whether this allegation is sufficient to raise the issue of prejudice in a post-conviction motion.

However, even assuming that Abdulkadir's motion might have properly alleged prejudice, the motion clearly failed to state facts actually *amounting to* prejudice. Because Abdulkadir withdrew his allegations concerning Vidal during the second hearing on the State's motion, we will not address the allegations about Vidal's possible testimony. As to Plater, Abdulkadir alleged that Plater "would have testified that he observed a fist fight between [Abdulkadir] and another inmate and he observed [Abdulkadir] take from the other party in the fist fight a knife or some other object which he saw [Abdulkadir] use while defending himself."

In *State v. Banks*,[9] we held that a defendant was not entitled to an evidentiary hearing because he had only alleged conclusions of law or fact. The defendant claimed ineffective assistance of counsel because his attorney allegedly failed to investigate potential witnesses who "would have supported a defense that [the defendant] acted in self-defense."[10] The defendant never explained what facts the potential witnesses could have testified to in support of the self-defense claim.

[5] Just as in *Banks*, the district court in the case at bar was correct to discount Abdulkadir's contention that Plater would testify that Abdulkadir used the knife "while defending himself." Self-defense is a legal conclusion, and the district court could not consider this phrase in determining whether an evidentiary hearing was warranted. The district court was

---

[9] *State v. Banks*, 289 Neb. 600, 856 N.W.2d 305 (2014).

[10] *Id*. at 605, 856 N.W.2d at 310.

constrained to reviewing only the factual allegations in the motion—that Plater "observed a fist fight between [Abdulkadir] and another inmate and he observed [Abdulkadir] take from the other party in the fist fight a knife or some other object which he saw [Abdulkadir] use."

At trial, both Abdulkadir and Robinson testified to the same facts alleged in Abdulkadir's motion. Abdulkadir does not allege that Plater would have introduced any additional facts at trial. Nor would it contradict any facts presented by the State about what occurred after Grandon fell. Instead, Abdulkadir, apparently overlooking Robinson's testimony in his review of the record, argues that he suffered prejudice because Plater would have been the only witness to corroborate Abdulkadir's own testimony.

[6-8] But even if we were to make every credibility determination in favor of Abdulkadir, all of the testimony at trial, as well as the alleged facts in Abdulkadir's motion for postconviction relief, cannot prove he acted in self-defense. To successfully claim one was acting in self-defense, the force used in defense must be immediately necessary and must be justified under the circumstances.[11] A defendant's use of deadly force in self-defense is justified if a reasonable ground existed under the circumstances for the defendant's belief that he or she was threatened with death or serious bodily harm, even if the defendant was actually mistaken about the extent of the danger.[12] Once the basis for an accused's reasonable belief that he or she is in danger of serious bodily harm has been dispelled, the accused's continued use of deadly force is not justified by self-defense.[13]

Abdulkadir and Robinson testified only that Grandon was the initial aggressor and that Grandon produced the knife from

---

[11] See *State v. Golka*, 281 Neb. 360, 796 N.W.2d 198 (2011).

[12] *State v. Miller*, 281 Neb. 343, 798 N.W.2d 827 (2011).

[13] See *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012) (finding that no self-defense instruction was required, because fight had ended and defendant shot and killed victim as victim ran away).

his pocket. Abdulkadir was then able to wrestle the knife from Grandon. At trial, Abdulkadir apparently could not recall what occurred next. Robinson claimed to have walked away at this point in the struggle.

The only other eyewitness evidence of the incident, from the various prison officials who testified at trial, establishes that Grandon fell to the floor and curled into a fetal position and that Abdulkadir continued stabbing Grandon anywhere between 3 and 15 more times. By the time the struggle ended, Grandon had suffered 25 stab wounds. While Abdulkadir stood over Grandon, he yelled, "'You think you can steal from me?'"[14] Finally, Abdulkadir later told other inmates that he had been acting in retaliation.

Under these circumstances, Abdulkadir did not have a good faith reasonable belief that he was still in imminent danger of serious bodily harm. Once Grandon fell helplessly to the floor, the threat to Abdulkadir was neutralized and he was no longer justified in using deadly force in self-defense. Nothing in Plater's alleged testimony, or any of Abdulkadir's evidence at trial, would contradict this finding. Thus, even assuming that counsel's choice not to call Plater would have been deficient—which we do not decide—it did not prejudice Abdulkadir's defense.

Abdulkadir's first assignment of error is, therefore, without merit.

In Abdulkadir's second assignment of error, he argues that the district court erred by denying postconviction relief. Because Abdulkadir's first assignment of error has no merit, his second assignment of error also fails.

## CONCLUSION

The decision of the district court is affirmed.

AFFIRMED.

---

[14] See *Abdulkadir, supra* note 1, 286 Neb. at 420, 837 N.W.2d at 514.